**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| MICHAEL G. SCHWERN, *Plaintiff-Appellee*, | No. 14-35576 |
| v. | D.C. No. 3:14-cv-00146-PK |
| PATRICK PLUNKETT, as personal representative of the Estate of Noirin Plunkett, *Defendant-Appellant*. | OPINION |

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernandez, District Judge, Presiding

Argued and Submitted November 9, 2016
Portland, Oregon

Filed January 17, 2017

Before: M. Margaret McKeown, William A. Fletcher,
and Raymond C. Fisher, Circuit Judges.

Opinion by Judge McKeown

# SUMMARY[*]

## Oregon Anti-SLAPP Law

The panel held that the court had jurisdiction to hear immediate appeals from district court denials of Oregon anti-SLAPP ("strategic lawsuit against public participation") motions; and reversed the district court's denial of appellant's anti-SLAPP motion to strike claims because appellee Michael Schwern failed to establish a prima facie case supported by substantial evidence of his claims of defamation, intentional infliction of emotional distress, and intentional interference with economic relations.

The panel held that in light of Oregon's amendment to its anti-SLAAP statute, this court had jurisdiction to review denials of Oregon anti-SLAPP motions.

The panel held that Schwern did not establish a probability that he would prevail on his claims, and therefore the motion to strike must be granted. Specifically, the panel held that even when construing the evidence in Schwern's favor, it could not reasonably infer that the appellant was the source of the alleged defamatory accusations against Schwern.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Dan G. Booth (argued), Booth Sweet LLP, Cambridge, Massachusetts, for Defendant-Appellant.

Bear-Wilner-Nugent (argued), Portland, Oregon, for Plaintiff-Appellee.

Margaret Garvin and Amy C. Liu, Portland, Oregon, as and for Amicus Curiae National Crime Victim Law Institute.

## OPINION

McKEOWN, Circuit Judge:

In this appeal we resolve the lingering uncertainty about our jurisdiction to hear immediate appeals from denials of Oregon anti-SLAPP ("strategic lawsuit against public participation") motions. Oregon amended its anti-SLAPP statute in 2009 with the purpose of "provid[ing] a defendant with the right to not proceed to trial in cases in which the plaintiff does not meet" the statutory burden. Or. Rev. Stat. § 31.152(4). This amendment, which is akin to a statutory immunity from suit, responded directly to our decision in *Englert v. MacDonell*, where we held that the prior statute did not provide for interlocutory review. 551 F.3d 1099, 1105–07 (9th Cir. 2009). In view of this legislative change, we conclude that we have jurisdiction to hear immediate appeals from denials of Oregon anti-SLAPP motions.

The motion at issue arises from Nóirín Plunkett's accusation that Michael Schwern raped her in September 2013. When Schwern was arrested, news quickly spread online. Schwern claimed the accusations were false and sued Plunkett for defamation, intentional infliction of

emotional distress, and intentional interference with economic relations. The district court denied Plunkett's anti-SLAPP motion.[1] We reverse because Schwern failed to meet his evidentiary burden.

## BACKGROUND

Nóirín Plunkett and Michael Schwern married in November 2011 and lived together in Portland, Oregon. During their relationship, they were both actively involved in the community of open-source software developers.

The marriage was not a happy one. On September 19, 2013, the couple filed for divorce. That night, they met for one final dinner at the home they once shared. What happened next is hotly disputed. While Schwern claims that they had consensual sex, Plunkett testified that he forced her to have oral sex, choked her, and penetrated her vagina with a knife. She also testified that she went to the emergency room where she had a forensic sexual assault examination, her injuries were photographed, and the police were called. Police arrested Schwern that night on charges of strangulation and harassment.

In the days that followed, information about Schwern's arrest percolated online. Three prominent open-source developers posted links on Twitter to Schwern's public arrest record, while organizations tied to the open-source community issued statements about Schwern's arrest and distanced themselves from him.

---

[1] Plunkett died on July 28, 2015. Her father, Patrick Plunkett, is the personal representative of her estate and was substituted as the party on appeal.

Plunkett moved from Oregon to Massachusetts shortly after Schwern's release on bail in late September 2013. According to Casey West, a mutual friend of the couple, West encountered Plunkett in Boston that fall; during the ensuing conversation, Plunkett allegedly told West that Schwern had raped her with a knife.

In January 2014, Schwern filed suit against Plunkett for defamation, intentional infliction of emotional distress, and intentional interference with economic relations. The gist of Schwern's complaint was that his professional reputation suffered due to rape allegations Plunkett allegedly made to the individuals and organizations that commented online about his arrest.

In response to the lawsuit, Plunkett filed a special motion to strike under Oregon's anti-SLAPP law, seeking dismissal of the case. A magistrate judge recommended denial of Plunkett's motion on the ground that Schwern had established a prima facie case, and the district court adopted this recommendation.

## ANALYSIS

## I. Jurisdiction

We first consider whether we have jurisdiction to hear this appeal under 28 U.S.C. § 1291, which permits us to review "final decisions" of district courts. The answer to this question is informed by the helter-skelter history of Oregon's anti-SLAPP law.

Oregon enacted its anti-SLAPP law in 2001 to create a procedure "for expeditiously dismissing unfounded lawsuits attacking certain types of public speech" through special motions to strike, or anti-SLAPP motions. *Plotkin v. State*

*Accident Ins. Fund*, 280 Or. App. 812, 814 (Or. Ct. App. 2016). Oregon used California's anti-SLAPP law as a model for its legislation. *See Englert*, 551 F.3d at 1101. Unlike California, though, Oregon did not initially allow immediate appeals from denials of anti-SLAPP motions. That distinction led us to treat the two states' laws differently.

Looking to California law, in *Batzel v. Smith* we addressed whether denial of a California anti-SLAPP motion is an immediately appealable "final decision." 333 F.3d 1018, 1024 (9th Cir. 2003) (citing 28 U.S.C. § 1291). We first noted that "California law recognizes the protection of the anti-SLAPP statute as a substantive immunity from suit," as evidenced by the statute's legislative history and inclusion of a right of immediate appeal. *Id.* at 1025. As a consequence, we held that we had jurisdiction because a "district court's denial of a claim of immunity, to the extent that it turns on an issue of law, is an appealable final decision within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Id.* at 1026.

When faced with the same issue regarding Oregon's anti-SLAPP law, we came to the opposite conclusion because Oregon's statute differed materially from its California counterpart. As we explained in *Englert*, "[t]he failure of the Oregon Legislature to provide for an appeal from the denial of a special motion to strike provides compelling evidence that, unlike their California counterparts, Oregon lawmakers did not want 'to protect speakers from the trial itself.'" 551 F.3d at 1106 (quoting *Batzel*, 333 F.3d at 1025). Instead, Oregon's law had a less ambitious scope: it sought only to enable a judge to "promptly review the evidence . . . to determine whether it had sufficient merit to go forward." *Id.* Absent an expression of immunity from trial, we held that we lacked jurisdiction to hear the appeal. *Id.* at 1107.

Oregon reacted swiftly to our decision in *Englert*. The legislature immediately passed amendments to create a right of immediate appeal from denials of anti-SLAPP motions to strike by providing that, "[i]f the court denies a special motion to strike, the court shall enter a limited judgment denying the motion." Or. Rev. Stat. § 31.150(1); *see also id.* § 19.205(1) (providing that a "limited judgment" is appealable). The amendments also clarified that the purpose of Oregon's anti-SLAPP procedure "is to provide a defendant with the right to not proceed to trial" when a plaintiff fails to meet the statutory burden. *Id.* § 31.152(4).

We have already acknowledged, albeit not definitively, that these amendments effectively overturned *Englert*. In *DC Comics v. Pacific Pictures Corporation*, we explained that "whether an immunity created by state law functions 'as an immunity from suit or merely a defense from liability' is dispositive in determining whether an immediate appeal of an order denying an immunity should be available." 706 F.3d 1009, 1015 (9th Cir. 2013) (citation omitted). Noting that "*Englert* has been superseded by changes to the underlying statute" because "Oregon's anti-SLAPP statute was amended to specifically provide for a right of immediate appeal," we stated that "the Oregon statute now likely affords immunity from suit, as California's does." *Id.* at 1016 n.8; *see also Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 276 (9th Cir. 2013) (Paez, J., concurring) (noting in citation that *Englert* was "superseded by" Oregon's amended anti-SLAPP law).

We now hold that we have jurisdiction to review denials of Oregon anti-SLAPP motions. Like California's anti-SLAPP law, Oregon's amended statute grants immunity from suit by "provid[ing] a defendant with the right to not proceed to trial," as the later-enacted right of immediate

appeal corroborates.  *See* Or. Rev. Stat. § 31.152(4); *see also Batzel*, 333 F.3d at 1025 (explaining that denials of anti-SLAPP motions are immediately appealable because "California lawmakers wanted to protect speakers from the trial itself rather than merely from liability").

## II.  The Anti-SLAPP Motion to Strike

The issue on appeal is whether Schwern established a probability that he will prevail on each of his claims "by presenting substantial evidence to support a prima facie case."  Or. Rev. Stat. § 31.150(3).

Under Oregon's anti-SLAPP law, a special motion to strike involves "a two-step process."  *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009).  The defendant must first demonstrate that the claim arises out of expressive activity protected by the statute.  Or. Rev. Stat. § 31.150(2), (3).  If the defendant makes this threshold showing, "the burden shifts to the plaintiff . . . to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case."  *Id.* § 31.150(3).  If the plaintiff fails to meet this burden, the motion to strike must be granted.  *Id.* § 31.150(1).

The parties do not dispute that Schwern's claims arise out of expressive activity protected by the statute.  *See id.* § 31.150(2), (3).  As a result, we must determine only whether Schwern produced substantial evidence to support a prima facie case.  *See id.* § 31.150(3).

In determining whether Schwern has met his burden under the second step, we view the evidence in the light most favorable to him and draw reasonable inferences in his favor.  *Plotkin*, 280 Or. App. at 815–16.  But "where there is a conflict between the parties' proffered factual narratives and

evidence," we "adopt the version most favorable" to Schwern only when "it is supported by substantial evidence." *Id.* at 816. In this context, "substantial evidence" means "sufficient evidence from which a reasonable trier of fact could find that the plaintiff met its burden of production" to support a prima facie case. *Handy v. Lane Cty.*, 360 Or. 605, 622–23 (2016).

The essence of Schwern's suit is that Plunkett made false rape accusations to the individuals and organizations that commented online about his arrest, thereby harming his professional reputation. Central to each claim, then, is Schwern's allegation that Plunkett actually communicated with these individuals and organizations following the incident. Yet Schwern offers no evidence that Plunkett ever spoke with any of the individuals who posted on Twitter about his arrest or that she communicated with any of the organizations that issued statements on their websites. As in *Handy*, "[t]he record does not show that [she] ever made any statement" to them. 360 Or. at 625. Instead, Schwern "mere[ly] speculat[es]" that she spoke to them. *Id.*

Even when construing the evidence in Schwern's favor, as we must, we cannot reasonably infer that Plunkett was the source. The online postings themselves do not help Schwern meet his burden because they recite truthful information that was freely available to the public. For example, one person posted a link to Schwern's public arrest record and wrote that Schwern "was arrested for assaulting his partner." Another organization confirmed that Schwern "was arrested by Portland Police" on charges of harassment and strangulation.

The only evidence that Plunkett spoke to *anyone* about the incident is a statement from Casey West that Plunkett told him about the alleged rape. The statement offers no details or elaboration. Setting aside Plunkett's objection to

the admission of this testimony, West's statement tells us nothing about whether Plunkett was the source of the online commentary. Whether she made a statement to West and whether she made statements to the individuals and organizations that commented online "are two separate issues." *See id.* Schwern offered no evidence that West ever repeated Plunkett's alleged statement to anyone. Indeed, the conversation with West ostensibly took place after Plunkett moved to Boston. So not only is there no link to the online postings, but the temporal link is speculative at best.

Absent any evidence that Plunkett was the source of the online commentary, a "reasonable trier of fact" could not find that Schwern met his burden of production to support a prima facie case with substantial evidence. *See id.* at 623. Schwern's theory offers "nothing other than speculation to fill in the gaps in his evidence." *Id.* at 626. His allegation that he "believe[s]" Plunkett made the statements is insufficient. In sum, because Schwern failed to establish a prima facie case through substantial evidence, Plunkett was entitled to relief under Oregon's anti-SLAPP law. We reverse and instruct the district court to grant Plunkett's motion to strike.

**REVERSED.**