FILED
United States Court of Appeals
Tenth Circuit

March 12, 2018

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENG CIRCUIT

LOS LOBOS RENEWABLE POWER,
LLC, and LIGHTNING DOCK
GEOTHERMAL, HI-01, LLC,

Plaintiffs-Appellees,

v.

AMERICULTURE, INC., and
DAMON SEAWRIGHT,

Defendants-Appellants.

No. 16-2046

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. 2:15-CV-00547-MV-LAM)**

---

*Submitted on the Briefs*

Charles N. Lakins, Lakins Law Firm, P.C., Albuquerque, New Mexico, for
Appellants.

Clinton W. Marrs and Patrick J. Griebel, Marrs Griebel Law Ltd., Albuquerque,
New Mexico, Earl E. DeBrine, Jr. and Emil J. Kiehne, Modrall, Sperling, Roehl,
Harris & Sisk, P.A., Albuquerque, New Mexico, and Michelle Henrie, Michelle
Henrie, LLC, Albuquerque, New Mexico, for Appellees.

---

Before **TYMKOVICH**, Chief Judge, **BALDOCK**, and **BRISCOE**, Circuit
Judges.

This appeal considers the applicability of a New Mexico statute to diversity actions in federal court. In this action, AmeriCulture filed a special motion to dismiss the suit under New Mexico's anti-SLAPP statute, a provision designed to expedite judicial consideration of so-called "strategic lawsuits against public participation." The district court, however, refused to consider that motion, holding the statute authorizing it inapplicable in federal court.

For the reasons set forth here, we agree. Judge Baldock first gives the factual background, on which the panel agrees. Chief Judge Tymkovich's opinion, which Judge Briscoe joins, explains why we have jurisdiction to hear this appeal under the collateral order doctrine. The opinion of Judge Baldock explains our unanimous holding on the merits of this appeal. Finally, Judge Baldock dissents to our jurisdictional holding.

## BACKGROUND

**BALDOCK,** Circuit Judge

The United States Bureau of Land Management leased 2,500 acres of geothermal mineral rights in Hidalgo County, New Mexico to Plaintiff Lightning Dock Geothermal HI-01, LLC (LDG), a Delaware company. Consistent therewith, LDG developed and presently owns a geothermal power generating project in Hidalgo County. LDG also developed a geothermal well field on the subject tract as part of its project. Defendant AmeriCulture, a New Mexico corporation under the direction of Defendant Damon Seawright, a New Mexico

-2-

resident, later purchased a surface estate of approximately fifteen acres overlying LDG's mineral lease—ostensibly to develop and operate a tilapia fish farm. Because AmeriCulture wished to utilize LDG's geothermal resources for its farm, AmeriCulture and LDG (more accurately its predecessor) entered into a Joint Facility Operating Agreement (JFOA). The purpose of the JFOA, at least from LDG's perspective, was to allow AmeriCulture to utilize some of the land's geothermal resources without interfering or competing with LDG's development of its federal lease. We are told that Plaintiff Los Lobos Renewable Power LLC (LLRP), also a Delaware company, is the sole member of LDG and a third-party beneficiary of the JFOA.

The parties eventually began to quarrel over their contractual rights and obligations. Invoking federal diversity jurisdiction under 28 U.S.C. § 1332, Plaintiffs LDG and LLRP sued Defendants Americulture and Seawright in federal court for alleged infractions of New Mexico state law.[1] Of particular importance here are the factual allegations contained in paragraphs 44D and 44E and the legal conclusions contained in paragraph 77 of Plaintiffs' first amended complaint. The former two paragraphs allege Defendants "impermissibly" objected to permit

---

[1] Plaintiffs' first amended complaint alleges breach of contract, breach of covenants of good faith and fair dealing, prima facie tort, tortious interference with business relations, and negligent misrepresentation. Plaintiffs seek damages, indemnification, a declaratory judgment, specific enforcement of the JFOA, and injunctive relief against Defendants.

applications Plaintiffs made before the New Mexico Office of the State Engineer and the New Mexico Oil Conservation Division. Paragraph 77 then concludes:

> Defendants Seawright and Americulture have both intentionally and negligently made material misrepresentations concerning the Plaintiffs and the Project to numerous state agencies and other public bodies for the sole purpose of delaying and subverting the Project solely for the purpose of giving Defendants a competitive advantage for the Defendants own intended production of Geothermal Power in violation of the JFOA.

Defendants responded to these allegations and conclusions by filing a "special motion to dismiss" pursuant to the New Mexico anti-SLAPP statute, a state legislative enactment aimed at thwarting "strategic lawsuits against public participation." N.M. Stat. Ann. §§ 38-2-9.1 & 38-2-9.2. As the factual basis for their motion, Defendants told the district court the permits which Plaintiffs sought and to which Defendants objected "pertained to activities conducted on lands other than the 15-acre fee estate covered by the JFOA." As the legal basis for their motion, Defendants asserted "New Mexico's Anti-SLAPP statute is a substantive state law designed to protect the Defendants from having to litigate meritless claims aimed at chilling First Amendment expression." Defendants described their rights under the state statute as "in the nature of immunity because New Mexico lawmakers also want to protect speakers from the trial itself rather than merely from liability."

The district court was not persuaded and denied Defendants' "special" motion because "New Mexico's Anti-SLAPP statute is a procedural provision

-4-

that does not apply in the courts of the United States." *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 2016 WL 8254920, at \*2 (D.N.M. 2016) (unpublished). Recognizing the interlocutory nature of the district court's decision, Defendants subsequently moved the court to amend its order to certify its decision for immediate appeal pursuant to 28 U.S.C. § 1292(b). The court did so. *Los Lobos Renewable Power, LLC v. Americulture.*, 2016 WL 8261743, at \*2–3 (D.N.M. 2016) (unpublished). But for whatever reason, Defendants failed to timely petition us for permission to appeal as required by § 1292(b)'s plain language. Instead, three days after the district court certified its ruling for appeal, Defendants filed their notice of appeal.

Given the respective positions of the panel members, this appeal requires us to resolve two issues:

1. Whether we may exercise jurisdiction over this appeal pursuant to the collateral order doctrine.

2. Whether the New Mexico anti-SLAPP statute applies in this federal diversity action.

We answer the first query yes, the second query no, and affirm the decision of the district court.

\* \* \*

Because the language of the New Mexico anti-SLAPP statute predominates this appeal, we set forth its relevant provisions prior to both our jurisdictional and merits analyses. The statute consists of two parts, N.M. Stat. Ann. §§ 38-2-9.1 &

-5-

38-2-9.2.  Because placing § 38-2-9.1 in proper context is imperative to its

construction, we commence with § 38-2-9.2, entitled "[f]indings and purpose":

> The legislature declares that it is the public policy of New Mexico to
> protect the rights of citizens to participate in quasi-judicial
> proceedings before local and state governmental tribunals.  Baseless
> civil lawsuits seeking or claiming millions of dollars have been filed
> against persons for exercising their right to petition and to participate
> in quasi-judicial proceedings before governmental tribunals.  Such
> lawsuits [1] can be an abuse of the legal process and [2] can impose
> an undue financial burden on those having to respond to and defend
> such lawsuits and [3] may chill and punish participation in public
> affairs and the institutions of democratic government.  These
> lawsuits should be subject to prompt dismissal or judgment to
> prevent the abuse of legal process and avoid the burden imposed by
> such baseless lawsuits.

*Id.* § 38-2-9.2.

Consistent with the "[f]indings and purpose" of the New Mexico anti-

SLAPP statute, § 38-2-9.1 is entitled "[s]pecial motions to dismiss unwarranted or

specious lawsuits; procedures; sanctions; . . . ."  Subsections A, B, and C of § 38-

2-9.1 provide:

> A.  Any action seeking money damages against a person for conduct
> or speech undertaken or made in connection with a public hearing or
> public meeting in a quasi-judicial proceeding before a tribunal or
> decision-making body of any political subdivision of the state is
> subject to a special motion to dismiss, motion for judgment on the
> pleadings, or motion for summary judgment that shall be considered
> by the court on a priority or expedited basis to ensure the early
> consideration of the issues raised by the motion and to prevent the
> unnecessary expense of litigation.
>
> B.  If the rights afforded by this section are raised as an affirmative
> defense and if a court grants a motion to dismiss, a motion for
> judgment on the pleadings or a motion for summary judgment filed

within ninety days of the filing of the moving party's answer, the court shall award reasonable attorney fees and costs incurred by the moving party in defending the action. If the court finds that a special motion to dismiss or motion for summary judgment is frivolous or solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney fees to the party prevailing on the motion.

C. Any party shall have the right to an expedited appeal from a trial court order on the special motions described in Subsection B of this section or from a trial court's failure to rule on the motion on an expedited basis.

*Id.* § 38-2-9.1.A–C.[2]

# APPELLATE JURISDICTION

**TYMKOVICH,** Chief Judge, with Judge Briscoe joining, on the issue of appellate jurisdiction.

As a preliminary matter, Plaintiffs contend the court does not have appellate jurisdiction.

After the district court refused to consider Defendants' special motion, the court certified for interlocutory review the question of whether New Mexico's anti-SLAPP statute applies to federal diversity cases. *See* 28 U.S.C. § 1292(b). That order opened a ten-day period within which Defendants could petition this court for permission to appeal. *See id.*; Fed. R. App. P. 5(a)(1). But Defendants failed to petition this court, and instead only filed a notice of appeal. Plaintiffs thus contend we lack jurisdiction.

---

[2] Subsections D, E, and F of N.M. Stat. Ann. § 38-2-9.1 have no bearing on the outcome of this appeal.

As a prerequisite to jurisdiction under these circumstances, we generally require a timely petition for permission to appeal. *Crystal Clear Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 415 F.3d 1171, 1175 (10th Cir. 2005). We have specifically rejected the notion that a party's notice of appeal may serve as such a petition. *See id.*; *Hellerstein v. Mr. Steak, Inc.*, 531 F.2d 470, 472 (10th Cir. 1976) (collecting cases from other jurisdictions). Thus, the district court's certification does not grant us authority to decide this appeal.

That leaves the collateral order doctrine. This court's jurisdiction is generally limited to "all final decisions" of the district courts. 28 U.S.C. § 1291. As the Supreme Court held in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), however, the federal courts of appeals have jurisdiction to review some orders not considered final in the traditional sense. *See id.* at 546–47. This "collateral order doctrine," as it has come to be called, "accommodates a 'small class' of rulings, not concluding the litigation, but conclusively resolving 'claims of right separable from, and collateral to, rights asserted in the action.'" *Will v. Hallock*, 546 U.S. 345, 349 (2006) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996)). These rulings are said to be "too important to be denied review and too independent of the cause itself" to justify waiting out the rest of the adjudication. *Cohen*, 337 U.S. at 546.

A party asserting jurisdiction under the collateral order doctrine must show that the district court's order: (1) "conclusively determine[d] the disputed

-8-

question," (2) "resolve[d] an important issue completely separate from the merits of the action," and (3) is "effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978). The Supreme Court has described these conditions as "stringent," *Will*, 546 U.S. at 349 (quoting *Dig. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994)), to protect against "overpower[ing] the substantial finality interests" the limit on our jurisdiction aims to further. *Id.* at 350. We therefore must apply it with an eye towards preserving judicial economy and avoiding "the harassment and cost of a succession of separate appeals from the various rulings" in a single case. *Id.* at 350.

Importantly, we "decide appealability for categories of orders rather than individual orders." *Johnson v. Jones*, 515 U.S. 304, 315 (1995). Thus, our task is not to look at the "individual case [and] engage in ad hoc balancing to decide issues of appealability." *Id.* Instead, we must undertake a more general consideration of "the competing considerations underlying all questions of finality—'the inconvenience and costs of piecemeal review on the one and the danger of denying justice by delay on the other.'" *Id.* (citation omitted). The latter end of that scale has often tipped in favor of constitutionally based immunities. *See Will*, 546 U.S. at 350. Yet these "examples" do not exclude other applications. *Id.* Indeed, the Supreme Court has also protected private parties from delay as well, even in civil actions. *See Eisen v. Carlisle &*

*Jacquelin*, 417 U.S. 156 (1974); *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684 (1950); *Cohen*, 337 U.S. 541.

With that in mind, we consider whether the district court's decision to not apply the New Mexico anti-SLAPP statute in federal court warrants interlocutory review under the collateral order doctrine. We address each of the three *Cohen* conditions below.

### 1. Condition One: Conclusively Determined

Neither party disputes that the district court conclusively determined the *Erie* issue in its order denying Defendants' special motion to dismiss. An order is "conclusive" if it is not subject to later review or revision by the district court. *Cf. Coopers*, 437 U.S. at 469; *Utah ex rel. Dep't of Health v. Kennecott Corp.*, 14 F.3d 1489, 1492 (10th Cir. 1994). In its order, the district court held that New Mexico's anti-SLAPP statute does not apply in federal court. That determination is final in the relevant sense. Defendants have thus satisfied the first condition of the collateral order doctrine.

### 2. Condition Two: Separate from the Merits

Whether New Mexico's anti-SLAPP statute applies in federal court is a discrete legal question completely separate from the underlying merits. An issue is completely separate from the merits if it is "significantly different from the fact-related legal issues that likely underlie the plaintiff's claim on the merits." *Johnson*, 515 U.S. at 314. The Supreme Court has indicated that the collateral

order doctrine's second condition is more likely to be satisfied "where purely legal matters are at issue." *Id*. at 316.

Plaintiffs claim the district court's application of the anti-SLAPP statute necessarily required considering and evaluating the merits of this action. We disagree.

It is one thing for a court to consider a New Mexico anti-SLAPP motion, apply the New Mexico anti-SLAPP statute, and deny the motion under the statute. *Cf., e.g.*, *Schwern v. Plunkett*, 845 F.3d 1241, 1243–45 (9th Cir. 2017) (Oregon law); *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 170–81 (5th Cir. 2009) (Louisiana law). It is an entirely different matter for the court to refuse to apply the anti-SLAPP statute at all. In the first scenario, the court must determine whether the special motion to dismiss is frivolous or available on its own terms, as well as whether or not to grant it. *See* N.M. Stat. § 38-2-9.1A-B. These determinations necessarily turn on the merits of the lawsuit. *See Ernst v. Carrigan*, 814 F.3d 116, 118–19 (2d Cir. 2016).

But the latter scenario presents a more abstract question of federal law that has nothing to do with the particular facts in this case. Indeed, whether federal courts can apply the New Mexico anti-SLAPP statute depends on considerations entirely external to the dispute between Plaintiffs and Defendants. Several other circuits have already recognized this crucial distinction. *See Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1357 (11th Cir. 2014) ("[T]he district court's order

-11-

regarding the applicability of [Georgia's anti-SLAPP statute] in federal court meets the second *Cohen* prong because it is entirely separate from the merits of the case."); *Godin v. Schencks*, 629 F.3d 79, 84 (1st Cir. 2010) ("[T]he issue of whether a defendant can utilize [Maine's anti-SLAPP statute] in federal court is distinct from the merits of [the] action."); *cf. Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 149 (2d Cir. 2013) (explaining that a ruling denying a motion for being "predicated on a source of law that did not apply to the suit" was "completely separate from the merits").

This is precisely the type of issue the collateral order doctrine's second condition contemplates. *See, e.g.*, *Cohen*, 337 U.S. at 545–46. Defendants have therefore met *Cohen*'s second condition.

### 3. Condition Three: Effectively Unreviewable on Appeal from Final Judgment

Lastly, we conclude the district court's order would be effectively unreviewable on appeal from final judgment.

"A major characteristic of the denial or granting of a claim appealable under *Cohen*'s 'collateral order' doctrine is that 'unless it can be reviewed before [the proceedings terminate], it can never be reviewed at all.'" *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985) (alteration in original) (quoting *Stack v. Boyle*, 342 U.S. 1, 12 (1951) (opinion of Jackson, J.)).

Plaintiffs argue the rights enshrined in New Mexico's anti-SLAPP statute could be protected after final judgment because they do not shield defendants from the burden of standing trial. But that is not the issue. True, the Supreme Court has placed orders denying certain species of immunity among the categories warranting interlocutory review. *Will*, 546 U.S. at 350. But an order need not deny an asserted immunity to satisfy *Cohen*'s test. *See Eisen*, 417 U.S. 156; *Swift*, 339 U.S. 684; *Cohen*, 337 U.S. 541; *cf. Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106–09 (2009) (conducting *Cohen*'s three-pronged analysis despite no claim of immunity).

Moreover, *similar* to a protection from standing trial, the New Mexico statute seeks to reduce the ordinary time and expense of litigation. *See* N.M. Stat. Ann. § 38-2-9.1A (making special motions available "to prevent the unnecessary expense of litigation"). It will not absolve liability that would otherwise lie. *Cf.*, *e.g.*, *Makaeff v. Trump Univ., LLC*, 715 F.3d 254 (9th Cir. 2013) (addressing a California anti-SLAPP statute that shifted substantive burdens and altered substantive standards). Instead, it creates a right to expeditious trial and appellate process.

This means that were we to wait for this case to conclude in the court below by ordinary process, the statute's sole aim would already be lost. Defendants would have already incurred the ordinary time and expense of litigation that the statute potentially grants them a right to avoid. Indeed, we can

-13-

reverse the rulings of a subordinate court, but we cannot order away proceedings and legal fees that have already passed into history. Nor can we remand the case with instructions to "do it again, but faster this time."

Defendants' characterization of the statute as conferring an immunity from trial carries some significance as well. While we ultimately conclude in this case that the statute is better read as not conferring immunity, Defendants' contention in the district court and on appeal is far from fanciful. Even so, on questions of first impression, we usually decline to credit a party's claim to immunity, opting to conduct our own analysis instead. *See Gen. Steel Domestic Sales, L.L.C. v. Chumley*, 840 F.3d 1178, 1181–82 (10th Cir. 2016). But this court has often—far too many times to count—taken interlocutory appeals based on asserted immunities only to deem those immunities inapplicable. *See, e.g.*, *Morris v. Noe*, 672 F.3d 1185 (10th Cir. 2012). Our cases thus draw an unsatisfying distinction between appeals concerning the *scope* of certain immunities on the one hand, and appeals concerning the *existence* of immunities that we have yet to recognize on the other. The better course may be to credit plausible assertions of novel state-law immunities—like this one—on matters of first impression in the *Erie* context. If, as here, we then determine that the asserted immunity is unavailable on the merits, it would end the matter for both purposes.

-14-

We also think it instructive that *Cohen* itself presented markedly similar facts. In that case, the Supreme Court considered whether a federal court sitting in diversity had to apply a New Jersey statute requiring plaintiff shareholders to post a security before prosecuting certain derivative actions. *See Cohen*, 337 U.S. at 544–45. The Court explained that the district court's decision to not apply the security law would "not be merged in final judgment." *Id.* at 546. Instead, the point of the security provision was to ensure *at the outset of litigation* that fee-shifting rules would be enforceable later on as a sanction. *See id.* at 545. It was thus a prerequisite to the cause of action itself. This protected corporations from harassing litigation brought by minor shareholders who could escape the consequences of their abuse of process.

In a similar way, the New Mexico anti-SLAPP statute aims to nip harassing litigation in the bud, thus protecting potential victims from the effort and expense of carrying on a frivolous lawsuit. We could not secure this statute's protections after final judgment on the merits because—just as in *Cohen*—burdensome legal process has already been brought to bear at that point. *See Royalty Network*, 756 F.3d at 1357.

The dissent points out that federal district courts have tools at their disposal to accomplish the same ends. And indeed they do. But the collateral order doctrine does not ask whether trial courts *might*—in their discretion—guarantee the deprived right by other means. It asks whether courts of appeals have

sufficient remedial power to reverse the effects of an erroneous order after litigation has run its course on the trial level. True, the Supreme Court has said that other "source[s] of recompense" weigh against satisfaction of *Cohen*'s third prong. *Digital Equipment*, 511 U.S. at 882. But a right to reduce the time and expense of litigation is poorly suited to satisfaction through *more* litigation. Because any remedy we—or any other court—can provide will at best end and at worst *prolong* litigation, alternate remedies prove inadequate here.

Nor does *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009), hold otherwise. In that case, the Supreme Court held an order disclosing privileged attorney-client communication ineligible for interlocutory review. *See id.* at 109. In so doing, the Court reasoned that reversal and remand after final judgment could negate any error of the district court in handling this evidence. *See id.* As for any interest in candor between counsel and client, the court thought it minimally infringed and still within the attorney's power to protect. *See id.* at 109–12. It did not say that any possible alternate means of vindication would defeat collateral order jurisdiction. Such a holding would have rendered the doctrine a nullity given the availability of interlocutory review by certification or a writ of mandamus. *Cf. id.* at 110–12. Whatever the merits of discarding *Cohen*, *see id.* at 114–19 (Thomas, J., concurring in part and concurring in the judgment), the Court did not take that path in *Mohawk*, and we may not blaze it here.

Several other circuits agree with our course. *See Royalty Network*, 756 F.3d 1351 (11th Cir.); *Godin*, 629 F.3d 79 (1st Cir.); *Liberty Synergistics*, 718 F.3d 138 (2d Cir.). The dissent, by contrast, stands alone.

Accordingly, this appeal meets *Cohen*'s third requirement.

\* \* \*

Because Defendants have satisfied all three conditions of the collateral order doctrine, we have jurisdiction to decide this appeal on the merits.

**ANALYSIS**

**BALDOCK,** Circuit Judge, for a unanimous panel on the merits.

Having concluded that we may exercise jurisdiction over Defendants' appeal, our next task is to determine whether the district court must apply the New Mexico anti-SLAPP statute in this federal diversity action for the enforcement of state-created rights. In undertaking this task, known as an *Erie* analysis after *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), the "overriding consideration" is "whether . . . the *outcome* would be 'substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in state court.'" *Berger v. State Farm Mut. Auto. Ins. Co.*, 291 F.2d 666, 668 (10th Cir. 1961) (emphasis added) (quoting *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945)). This means that in a federal diversity action, the district court

applies state substantive law—those rights and remedies that bear upon the outcome of the suit—and federal procedural law—the processes or modes for enforcing those substantive rights and remedies. *See Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941). State laws that solely address procedure and do not "function as a part of the State's definition of substantive rights and remedies" are inapplicable in federal diversity actions. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 416–17 (2010) (Stevens, J., concurring in the judgment).[3]

Of course, distinguishing between procedural and substantive law is not always a simple task. "Classification of a law as 'substantive' or 'procedural' for *Erie* purposes is *sometimes* a challenging endeavor." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (emphasis added). "A state procedural rule, though undeniably procedural in the ordinary sense of the term, may exist to influence substantive outcomes, and may in some instances become so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy." *Shady Grove,* 559 U.S. at 419–20 (Stevens, J., concurring in the judgment) (internal citation and quotation marks omitted). Where the line between procedure and substance is unclear, the Supreme Court has set forth a multi-faceted analysis designed to prevent both forum shopping

---

[3] Justice Stevens' concurrence in *Shady Grove* provides the controlling analysis in the Tenth Circuit. *See James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217 (10th Cir. 2011).

-18-

and the inequitable administration of the laws.  *See generally* Erwin Chemerinsky, *Federal Jurisdiction* § 5.3, at 351–365 (7th ed. 2016).  Fortunately, we need not rely on any complex *Erie* analysis here because, assuming one is able to read, drawing the line between procedure and substance in this case is hardly a "challenging endeavor."  The plain language of the New Mexico anti-SLAPP statute reveals the law is nothing more than a *procedural* mechanism designed to expedite the disposal of frivolous lawsuits aimed at threatening free speech rights.

Section 38-2-9.2, which sets forth the anti-SLAPP statute's purpose, says the statute addresses *only* "[b]aseless civil lawsuits" arising out of a defendant's participation in proceedings before a quasi-judicial governmental body.  These are lawsuits designed to "abuse . . . the legal process," "impose an undue financial burden on those having to respond," and "chill and punish participation in public affairs."[4]  Consistent therewith, the title to § 38-2-9.1 says the anti-SLAPP statute addresses "unwarranted or specious lawsuits; procedures; sanctions."  The New Mexico Supreme Court has told us that "[f]or the purpose of determining the legislative intent we may look to the title, and ordinarily it may be considered as a part of the act if necessary to its construction."  *Tri-State Generation and*

---

[4] Notably, the anti-SLAPP statute recognizes that not *every* lawsuit arising out of a defendants participation in proceedings before a quasi-judicial governmental body is baseless.  N.M. Stat. Ann. § 38-2-9.1.B (providing for a sanction of fees and costs where a movant files an unwarranted motion pursuant to the anti-SLAPP statute).

*Transmission Assoc. Inc. v. D'Antonio*, 289 P.3d 1232, 1238 (N.M. 2012) (internal quotation marks omitted).

Also critical to a sound construction of the New Mexico anti-SLAPP statute are the first three subsections of § 38-2-9.1. Subsection A is unquestionably the most important of the three subsections. It mandates the expedited procedures applicable to the type of frivolous or retaliatory lawsuits at which § 38-2-9.2 tells us the statute is aimed. Subsections B and C are dependent subsections, entirely meaningless absent subsection A. Both the title of § 38-2-9.1 and the body of subsection A state that a dispositive pretrial motion filed pursuant to the anti-SLAPP statute is "special." According to the plain terms of subsection A, the only reason such motion is "special" is that it "shall be considered by the court on a priority or expedited basis to ensure early consideration of the issues raised by the motion and to prevent the unnecessary expense of litigation." *Id*. § 38-2-9.1.A. Most importantly for our purpose, subsection A sets forth no rule(s) of substantive law. Rather, it tells the trial court to hurry up and decide dispositive pretrial motions in lawsuits that a movant claims fit the description of "baseless" provided in § 38-2-9.2, *i.e.*, frivolous lawsuits—and that's it. All subsection A demands is expedited procedures designed to promptly identify and dispose of such lawsuits.

The New Mexico Supreme Court's recent decision in *Cordova v. Cline*, 396 P.3d 159 (N.M. 2017), supports our reading of the anti-SLAPP statute to a tee. In

-20-

that case, plaintiff filed a malicious abuse of process claim against members of a citizens' association following their efforts to remove him from the school board. Six of those members responded by filing a "special" motion to dismiss pursuant to N.M. Stat. Ann. § 38-2-9.1.A. The trial court granted the members' motion to dismiss and plaintiff appealed, ultimately to the New Mexico Supreme Court. The state supreme court held the association members were "entitled to the *procedural* protections of the New Mexico [anti-SLAPP] statute." *Cordova*, 396 P.3d at 162 (emphasis added). But to resolve the case on the merits, the court relied on a substantive immunity defense *entirely separate* from the anti-SLAPP statute. The court identified the relevant inquiry as whether the members were "entitled to the *substantive* protections provided by the *Noerr-Pennington* doctrine."[5] *Id*. at 166 (emphasis added). The court could not have made itself any clearer: "While the Anti-SLAPP statute provides the *procedural* protections [the members] require, the *Noerr-Pennington* doctrine is the mechanism that offers [the members] the *substantive* First Amendment protections they seek." *Id*. 166–67 (emphasis added). The court ended its analysis by holding the association

_____

[5] The *Noerr-Pennington* doctrine provides a qualified immunity from liability under antitrust laws for political activities associated with attempts to influence legislation having an anticompetitive effect. *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965). Both federal and state courts have extended the doctrine to confer immunity for a range of conduct aimed at influencing the Government. *See*, *e.g.*, *Cordova*, 396 P.3d at 167.

members were "entitled to immunity under the *Noerr-Pennington* doctrine." *Id*. at 162.

After *Cordova*, one cannot reasonably read the language of the New Mexico anti-SLAPP statute as providing a defendant with a substantive defense to SLAPP liability. To be sure, the statute seeks to spare those who exercise their free speech rights before a quasi-judicial governmental body from unwarranted and harassing litigation that threatens to chill the exercise of such rights. As *Cordova* plainly tells us, however, the statute as written pursues this policy through purely *procedural* means. The New Mexico anti-SLAPP statute sets forth a unique "judicial process for enforcing rights and duties recognized by substantive law," that is, substantive law located *entirely* outside the four corners of the anti-SLAPP statute. *Sibbach*, 312 U.S. at 14; *see also Cuba v. Pylant*, 814 F.3d 701, 719 (5th Cir. 2016) (Graves, J., dissenting) (construing a Texas anti-SLAPP statute broader than § 38-2-9.1 as "clearly a procedural mechanism for speedy dismissal of a meritless lawsuit" that infringes on a defendant's free speech rights). *Cordova* undoubtedly stands for a proposition consistent with the anti-SLAPP statute's language, namely, that a movant under the New Mexico anti-SLAPP statute must look outside the statute for substantive defenses designed to defeat a SLAPP lawsuit on its merits.

A defendant's reliance on § 38-2-9.1 may very well hasten a SLAPP suit's outcome. This is precisely what the New Mexico statute is designed to do.

Unlike many other states' anti-SLAPP statutes that shift substantive burdens of proof or alter substantive standards, or both, under no circumstance will the New Mexico anti-SLAPP statute have *any* bearing on the suit's merits determination. *See*, *e.g.*, *Makaeff v. Trump Univ., LLC*, 715 F.3d 254 (9th Cir. 2013) (addressing a California anti-SLAPP statute that shifted substantive burdens and altered substantive standards). The New Mexico statute does not alter the rules of decision by which a court will adjudicate the merits of the complaint. The statute "alter[s] only how the claims are processed." *Shady Grove*, 559 U.S. at 407 (plurality opinion). If a defendant in an action described in the opening words of § 38-2-9.1.A has violated the underlying substantive law as alleged in the complaint, *nothing* in the New Mexico anti-SLAPP statute exempts or shields the defendant from liability. The *only* means by which a defendant may avoid liability is to raise a substantive defense entirely separate from the anti-SLAPP statute.

Subsections B and C of § 38-2-9.1 reinforce our plain reading of subsection A because, like subsection A, neither subsection states any rule of substantive law. Subsection B, which the title of § 38-2-9.1 plainly tells us is a "sanctions" provision, consists of two sentences. The second sentence protects a responding party's interests by stating that if a special motion filed pursuant to the anti-SLAPP statute is "frivolous or solely intended to cause unnecessary delay," the trial court shall award fees and costs to the party responding to the motion. N.M.

-23-

Stat. Ann. § 38-2-9.1.B. We have never encountered a substantive fee-shifting provision—that is, one designed primarily to compensate for services rendered—worded as such. Clearly, subsection B's second sentence is a procedural provision primarily designed to punish and deter a defendant from improperly invoking § 38-2-9.1. *See Farmer v. Banco Popular*, 791 F.3d 1246, 1256 (10th Cir. 2015) (explaining that procedural fee shifting involves a court's authority to sanction for an abuse of the legal process or bad faith conduct in litigation).

Given the context in which § 38-2-9.2 places § 38-2-9.1, why should the Court construe subsection B's first sentence which awards fees and costs to a successful movant any differently? To be sure, the subsection's first sentence does not expressly refer to frivolous or retaliatory lawsuits. But why should it? Section 38-2-9.2 plainly tells us the New Mexico anti-SLAPP statute is aimed at a particular type of frivolous or retaliatory lawsuit. Therefore, construing the entirety of subsection B as a procedural fee-shifting device makes perfect sense. Save the second sentence of subsection B, which is aimed at a type of frivolous motion, the entire statute is aimed at a type of "baseless" lawsuit. As § 38-2-9.1's title plainly suggests, Subsection B's first sentence provides for the imposition of fees and costs as a *sanction* primarily designed not to compensate for legal services but to vindicate First Amendment rights threatened by a kind of "unwarranted or specious" litigation.

All this leaves only subsection C for our consideration. Subsection C provides for an "expedited appeal" from a trial court's ruling, or failure to rule, on a "special" motion. In *Cordova*, the New Mexico Supreme Court held § 38-2-9.1.C allows a party to bring an interlocutory appeal in state court from a decision on a special motion filed pursuant to the New Mexico anti-SLAPP statute. *Cordova*, 396 P.3d at 165. After the trial court granted the association members' special motion, two of those members had counterclaims still pending. Thus, the appeal was interlocutory in nature. The supreme court, sensibly enough, reasoned that "[b]oth the plain language and the purpose of the anti-SLAPP statute underscore a clear legislative intent to provide an interlocutory appeal." *Id*. The purpose of the statute, according to the court, is to protect those who exercise their right to petition from the financial burden of having to defend against "retaliatory" lawsuits. *Id*. And the statute's plain language reinforces this purpose:

> Importantly, the plain language of Subsection A explicitly provides that the expedited process must allow for the *early consideration* of the issues raised by the motion and to prevent the unnecessary expense of litigation. Therefore *the plain language of Subsections A, B, and C of the Anti-SLAPP statute describes an expedited process that is necessarily interlocutory in nature*.

*Id*. at 164 (second emphasis added) (internal citation and quotation marks omitted). Nowhere in *Cordova* did the New Mexico Supreme Court suggest the

-25-

"expedited process" mandated by subsection A of § 38-2-9.1 constitutes a substantive defense to a SLAPP suit. Relying exclusively on "the plain language and the purpose" of the statute, the court decided the New Mexico legislature's *desire for expedited procedures* to thwart retaliatory lawsuits that abused the judicial process and threatened to chill free speech *alone* justified an interlocutory appeal. *Id.* at 165.

Undeterred by the New Mexico anti-SLAPP statute's plain language and the New Mexico Supreme Court's interpretation of it in *Cordova*, Defendants tell us "the statute clearly expresses the intent of New Mexico's legislature to provide individuals immunity from suit" or "a right not to stand trial." Defs' Br. at 12. The statute expresses nothing of the sort. Civil immunity, whether absolute or qualified, is properly defined as an exemption from liability. *See Black's Law Dictionary* 817 (9th ed. 2009); *see also Antoine v. Byers & Anderson, Inc.* 508 U.S. 429, 432 (1993) (explaining that the proponent of a claim to immunity bears the burden of justifying an "exemption from liability."). Of course, an exemption from liability necessarily encompasses a right not to stand trial that may be effectively lost if a court fails to resolve the question of immunity at the earliest opportunity. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (explaining that Supreme Court precedent "recognized an entitlement not to stand trial or face the other burdens of litigation, *conditioned on* the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly

established law." (emphasis added)). But *only* where the law exempts one from

liability can one claim a substantive right not to stand trial in the sense of civil

immunity.[6]

As the astute reader recognizes by now, the New Mexico anti-SLAPP

statute does not exempt a party subject to an alleged SLAPP suit from liability.

Because absolutely nothing in the language of the anti-SLAPP statute exempts

from liability under any circumstance one who has violated the law while

petitioning a governmental body, the statute cannot constitute a grant of

immunity. The "right not to stand trial" is not, as Defendants suggest, a

substantive defense in the form of immunity itself. Such right is an entitlement

---

[6] We note here that the *original* version of New Mexico House Bill 241—a Bill the State of New Mexico never enacted into law—clearly sought to grant an immunity from SLAPP suits, albeit a limited or qualified one. H.B. 241, 45th Leg., 1st Sess. (N.M. 2001) (reproduced as Appendix A in Frederick M. Rowe and Leo M. Romero, *Resolving Land-Use Disputes by Intimidation: SLAPP Suits in New Mexico*, 32 N.M. L. Rev. 217, 240–41 (2002)). Among other clear indicators within the original Bill, § 2.A plainly provided that a defendant was immune from liability in an action arising out of the defendant's objectively reasonable or good faith exercise of free speech before a governmental body. The original version of H.B. 241 unequivocally illustrates that the New Mexico legislature understands quite well how to draft a law providing a class of individuals with a limited immunity from suit. But the revised version of H.B. 241, which ended up as N.M. Stat. Ann. §§ 38-2-9.1 & 38-2-9.2, removed *all* references to immunity. This history undoubtedly reinforces our plain reading of the New Mexico anti-SLAPP statute as a purely procedural device.

*dependent* upon an exemption from liability, an exemption that under a plain reading of the New Mexico anti-SLAPP statute does not appear therein.[7]

In this case, the line between procedure and substance is clear. A plain reading of the New Mexico anti-SLAPP statute reveals the statute is not designed to influence the *outcome* of an alleged SLAPP suit but only the *timing* of that outcome. The statute simply does not define the scope of any state substantive right or remedy. As we have learned, the statute is procedural in all its aspects. The statute's purpose is the prompt termination of certain lawsuits the New Mexico legislature deemed to be both unduly burdensome and a threat to First Amendment rights. To this end, the statute provides a movant the "right" to have a trial court promptly review the merits of the case (and, if necessary, the "right" to have an appellate court do so as well), so as to limit any harm engendered by

---

[7] Defendants' faulty reasoning finds its genesis (not surprisingly) in the Ninth Circuit's decision in *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003). There, the court in passing described a defendant's rights under the California anti-SLAPP statute as "in the nature of immunity: They protect the defendant from the burdens of trial, not merely from the ultimate judgments of liability." *Id.* at 1025; *see also NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742 (5th Cir. 2014) (blindly following *Batzel*'s dicta and, absent critical analysis, construing Texas' anti-SLAPP statute as a grant of immunity). But right or wrong, the Ninth Circuit's construction of a California statute very different from its New Mexico counterpart is none of our business. Our concern is with the proper interpretation of a much narrower statute, one that, as we have seen, does not protect a defendant "from the ultimate judgments of liability." *See Metabollic Research, Inc. v. Ferrell*, 693 F.3d 795, 799 (9th Cir. 2012) ("[D]eeper inspection has persuaded us that, while all of the [anti-SLAPP] statutes have common elements, there are significant differences as well, so that each state's statutory scheme must be evaluated separately.").

the "baseless" lawsuit defined in N.M. Stat. Ann. § 38-2-9.2.  But rest assured, if the merits of the case justify liability, a defendant will be held liable notwithstanding the anti-SLAPP statute, *unless* the defendant presents a successful defense wholly unrelated to the anti-SLAPP statute.  *See Cordova*, 396 P.3d at 166–67 (applying the *Noerr-Pennington* doctrine to relieve defendants of substantive liability in a SLAPP suit).  A defendant's reliance on § 38-2-9.1 will not alter the suit's outcome because it does not provide a defendant the right to avoid liability apart from a separate determination of the suit's underlying merits. The proper course is to recognize the New Mexico anti-SLAPP statute as a procedural mechanism for vindicating existing rights and nothing more.[8]

---

[8] The *Erie* analysis called for in more nuanced cases, if properly undertaken, makes no difference to a correct resolution of this case.  First, whether the New Mexico anti-SLAPP statute can logically operate alongside the Federal Rules of Civil Procedure without conflict is very much debatable.  Rules 11 (sanctions), 12(b) (motions to dismiss), 12(c) (motions for judgment on the pleadings), 16(a) (expedited proceedings), and 56 (motions for summary judgment) seem to cover all the bases, leaving little room for § 38-2-9.1 to operate in federal court.  But even assuming for the sake of brevity that the anti-SLAPP statute can exist alongside the Federal Rules, the twin aims of *Erie* —"discouragement of forum-shopping and avoidance of inequitable administration of the laws"—do *not* render the state statute substantive for *Erie* purposes.  *Hanna v. Plummer*, 380 U.S. 460, 468 (1965).  Anyone who believes that a federal district court is ill-equipped to deal swiftly and harshly with the sort of lawsuits described in N.M. Stat. Ann. § 38-2-9.2 absent application of § 38-2-9.1 is seriously mistaken.  Those litigants and lawyers who seek to circumvent application of the New Mexico anti-SLAPP statute by filing a baseless SLAPP lawsuit in federal district court are in for a rude awakening.

Accordingly, the decision of the district court denying application of the New Mexico anti-SLAPP statute in this federal diversity action is AFFIRMED. Defendants' motion to certify a question of state law is DENIED.

**BALDOCK,** Circuit Judge, dissenting as to jurisdiction.

The Court initially holds that we may exercise jurisdiction over Defendants' appeal pursuant to the collateral order doctrine, a doctrine identified with *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). The Court's holding, in my view, finds little support in Supreme Court jurisprudence. The Supreme Court has admonished us recently "that the class of collaterally appealable orders [*i.e.*, those falling within the collateral order doctrine] must remain narrow and selective in its membership." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 113 (2009) (internal quotation marks omitted). Further, the Supreme Court has told us its "[p]rior cases *mark the line* between rulings within the class and those outside." *Will v. Hallock*, 546 U.S. 345, 350 (2006) (emphasis added). For reasons the Court explained in *Will*, the only *categories of orders* on the immediately appealable side of the line are as follows: (1) the denial of a state actor's absolute immunity defense, (2) the denial of a state actor's qualified immunity defense, (3) the denial of a state's Eleventh Amendment immunity defense, and (4) the denial of a criminal defendant's double jeopardy defense.[1] *Id.* at 350–53. Notably, over the past forty years, the

---

[1] The Court correctly points out that in applying the collateral order doctrine we decide appealability for categories of orders rather than individual orders. Interestingly, the Supreme Court has never identified the category of appealable order under which its decision in *Cohen* falls. In *Cohen*, the state statute at issue in a stockholder's derivative action made the plaintiffs, if unsuccessful, liable for all expenses, including fees, of the defense and required security for their payment as a condition for prosecuting the action. The

(continued...)

Supreme Court has not sanctioned an appeal pursuant to the collateral order doctrine in a civil case between two private parties, notwithstanding the importance of the interest at stake. *See, e.g.*, *Mohawk Indus.*, 558 U.S. at 109 (acknowledging the sanctity of the attorney-client privilege but holding a district court's order adverse to the privilege was not immediately appealable under the collateral order doctrine).

As the Court's opinion ultimately concludes, the New Mexico anti-SLAPP statute in no sense constitutes a grant of immunity to Defendants. Thus, the present appeal unquestionably falls outside the line the Supreme Court has marked for categories of collaterally appealable orders. Under the third *Cohen* inquiry, *i.e.,* whether a claim would be effectively unreviewable absent application of the collateral order doctrine, "[t]he justification for immediate appeal must . . . be sufficiently strong to overcome the usual benefits of deferring appeal until litigation concludes." *Mohawk Indus.*, 558 U.S. at 107. This is because "[p]ermitting piecemeal, prejudgment appeals . . . undermines 'efficient judicial administration' and encroaches upon the prerogatives of district court judges, who play a 'special role' in managing ongoing litigation." *Id.* at 106.

---

[1](...continued)
Supreme Court concluded that upon final judgment, it would "be too late effectively to review the present order and the rights conferred by the statute, if applicable." *Cohen*, 337 U.S. at 546. This appeal is readily distinguishable from *Cohen*. As my dissent shall well illustrate, the procedures provided for in the New Mexico anti-SLAPP statute are adequately vindicable in federal court by means other than application of the collateral order doctrine.

While the importance of the First Amendment rights asserted in an alleged SLAPP suit cannot be gainsaid, Supreme Court precedent plainly identifies the pertinent question as whether these rights may be "adequately vindicable" by means other than application of the collateral order doctrine. *Id.* at 107. "[T]he decisive consideration is whether delaying review until the entry of final judgment would imperil a substantial public interest or some particular value of high order." *Id.* (internal quotation marks omitted).

So what is this Court's "sufficiently strong" justification for ignoring the final judgment rule and exercising jurisdiction over this appeal pursuant to the collateral order doctrine? Or stated otherwise, what is "the danger of denying justice" by delaying an appeal until final judgment? *Johnson v. Jones*, 515 U.S. 304, 315 (1995). The Court tells us that if we ignore the New Mexico anti-SLAPP statute's policy of protecting individuals from SLAPP lawsuits until final judgment, then "the statute's sole aim would already be lost" because Defendants "would have already incurred the ordinary time and expense of litigation that the statute potentially grants it a right to avoid." Court's Op. at 13.

This Court could not be more wrong. An immediate appeal in this case is unnecessary to protect Defendants from what they say is a frivolous lawsuit designed to chill their exercise of First Amendment rights. The Supreme Court has recognized that a party claiming an adversary is pursuing litigation for an improper purpose "*need not rely on a court of appeals for protection.*" *Digital*

*Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 882–83 (1994) (emphasis added). To suggest otherwise is an affront to the federal district court and its ability to manage its own docket. As a former federal district judge, "Woe!" I say to litigants and lawyers who seek to circumvent application of a state anti-SLAPP statute by filing baseless SLAPP lawsuits in federal district court—lawsuits that in the words of the New Mexico legislature, "chill and punish participation in public affairs," "impose an undue financial burden," and "abuse . . . the legal process." N.M. Stat. Ann. § 38-2-9.2. Rest assured, federal district courts are willing and able to dispose of these unsavory suits in a just manner. This is particularly so where defendants are more than willing to point out the true nature of these suits by moving for judgment as a matter of law and for sanctions in the form of fees and costs—just as they would in New Mexico state court under the anti-SLAPP suit!

Federal district courts have a long and storied history of safeguarding constitutional rights and a bevy of procedural tools in their arsenal to combat abuses of the judicial process that threaten the exercise of those rights. For example, the Federal Rules of Civil Procedure provide for expedited proceedings in federal court. *See* Fed. R. Civ. P. 16(a). These same rules, together with various statutes and the district court's inherent authority, permit the imposition of fees and costs as a sanction on those responsible for filing SLAPP lawsuits. *See, e.g.*, Fed. R. Civ. P. 11. *Experience* suggests federal courts will not hesitate

-4-

to utilize one or more of these tools to punish and deter unwarranted litigation of any sort, and many litigants and lawyers can grudgingly testify to the same.

*If the first amended complaint's allegations challenging Defendants' speech-related activities are as frivolous as Defendants insist, then they do not need to rely in the first instance on the court of appeals for protection.*[2]  And this *means—wholly consistent with Supreme Court precedent—that the collateral order doctrine has no application here.*  Accordingly, I respectfully but strongly dissent from the Court's holding that we have jurisdiction over this appeal pursuant to the collateral order doctrine.

---

[2]  Another factor working against Defendants is that at one point they had the district court's blessing to request our discretionary review.  The Supreme Court has noted that "litigants confronted with a particularly injurious or novel . . . ruling have several potential avenues of review apart from collateral order appeal." *Mohawk Indus.*, 558 U.S. at 110.  This case well illustrates the availability of one discretionary review mechanism.  Here, the district court, cognizant of the suit's nature, certified its ruling that the New Mexico anti-SLAPP statute did not apply in federal court for an immediate appeal under 28 U.S.C. § 1292(b).  Little doubt exists in my mind that other district courts faced with lawsuits that may imperil First Amendment rights would similarly certify their non-final rulings for immediate appeal.  For whatever reason, however, Defendants failed to timely petition us for permission to appeal once the district court certified the *Erie* question for interlocutory review.  *See* 28 U.S.C. § 1292(b).  Defendants'—or perhaps more accurately defense counsel's—apparent nonfeasance not only has caused this Court to expend valuable time addressing the *Cohen* issue but also surely has caused all parties to incur unnecessary fees and expenses.  How ironic that Defendants claim their adversaries are running up unnecessary fees and expenses while doing so themselves!