******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

D'AURIA, J., with whom ECKER and ALEXANDER, Js., join, dissenting. Many states have passed what have come to be known as anti-SLAPP[1] statutes. Connecticut's legislature passed a version of this kind of statute in 2017. See General Statutes § 52-196a. A hallmark of these statutes is the availability of early court intervention to protect those who claim that a lawsuit has been filed against them in retaliation for their exercise of protected constitutional rights.[2] On an expedited basis and on a quickly assembled record, a trial judge serves as a gatekeeper, promptly weeding out and dismissing lawsuits that plainly have been filed for this illegitimate purpose.

When the legislature passed the legislation that became § 52-196a, it was not writing on a blank slate. Many state legislatures had already passed these kinds of statutes, and the legislative history of § 52-196a notes that we borrowed generously from these models. Some of these other states' statutes, including those the legislature most conspicuously borrowed from, explicitly provided for an interlocutory appeal from the denial of an early motion, in Connecticut called a "special motion to dismiss." Some do not provide explicitly for an appeal. Still other legislatures amended their states' statutes to provide for an interlocutory appeal after a court had ruled that no such appeal was authorized.

Connecticut's statute does not explicitly provide for an interlocutory appeal. The majority today, however, finds authority for such an appeal in what should be a narrow avenue, doing so based on the second prong of the test adopted in *State* v. *Curcio*, 191 Conn. 27, 463 A.2d 566 (1983), which allows for an immediate appeal "[when] the order or action so concludes the rights of the parties that further proceedings cannot affect them." Id., 31. Even under the second prong of *Curcio*, though, we are obliged pursuant to General Statutes § 1-2z to take our cues from what the legislature has said about the "nature of the statutory right" at issue, as the majority phrases it. In my view, based on the statutory language and the available evidence of legislative intent, the majority's analysis does not abide by § 1-2z. Rather, I conclude that the defendants, Aaron Supple, Karen Montejo, Hendrick Xiong-Calmes and Giana Moreno, who were students at Trinity College in Hartford, have failed to establish that a right already secured to them will be irretrievably lost absent an immediate appeal.

We traditionally have "strictly construe[d]" the right to appeal; E. Prescott, Connecticut Appellate Practice & Procedure (5th Ed. 2016) § 2-1:1.2, p. 44; including the right to appellate review of interlocutory rulings. In my view, the legislature expects us to do exactly that. The legislature knows we will look for explicit statutory language authorizing an interlocutory appeal and for "distinctive and unmistakable" language in defining a statutory right that might meet the strictures of the second prong of *Curcio. Trinity Christian School* v. *Commission on Human Rights & Opportunities*, 329 Conn. 684, 696, 189 A.3d 79 (2018). I do not believe that the defendants have established that, under § 1-2z and our case law, the legislature authorized us to hear appeals from these gatekeeper rulings. And I do not believe that, having opened the door to these appeals, they will be as easy to rule on and dispose of as the majority might expect. For all of the reasons that follow, I respectfully dissent.

I

I will assume familiarity with the details of the incidents that gave rise to this action, as aptly described in the majority opinion, and focus first on the trial court proceedings. Review of those proceedings provides an appropriate appreciation of the beneficial measures enacted in Connecticut's anti-SLAPP statute, § 52-196a, by which the legislature balanced the rights of plaintiffs who claim damages to pursue legal action in our courts; see Conn. Const., art. I, § 10;[3] and the rights of defendants who claim that the action is nothing more than retaliation for exercising their protected constitutional rights.

The plaintiffs, Gregory B. Smith, Nicholas Engstrom and The Churchill Institute, Inc., brought this action against the defendants on April 5, 2021, alleging libel per se, libel per quod, and negligent infliction of emotional distress. The defendants filed a "special motion to dismiss," arguing that, in the language of § 52-196a, the plaintiffs' claims were based on the defendants' exercise of their rights of free speech or association in connection with a matter of public concern under the first amendment to the United States constitution. As required by § 52-196a (c), the defendants filed their motion within thirty days of the return date.

The defendants' special motion to dismiss gave rise to an expedited trial court procedure. Specifically, pursuant to § 52-196a (d), the filing of the motion prompted a stay of discovery, which applies unless the court finds "specified and limited discovery relevant to the special

motion to dismiss" necessary.[4] On July 21, 2021, after a condensed briefing period, the trial court conducted an expedited hearing on the motion.[5] The court issued a decision denying the motion on November 16, 2021, within the time our rules of practice afford for rulings on short calendar matters. See Practice Book § 11-19 (a) (court "shall issue a decision on such matter not later than 120 days from the date of such submission"); see also General Statutes § 52-196a (e) (4) (directing court to rule on special motion "as soon as practicable").

The trial court held that the defendants had failed to meet their burden under § 52-196a (e) (3) of demonstrating that the plaintiffs' complaint is based on the defendants' right to free speech because their communications at Trinity College were not made in a "public forum," as required under § 52-196a (a) (2).[6] The trial court further held that a private college, like Trinity College, was not a state actor for purposes of triggering first amendment protections under the federal constitution.

The defendants filed an appeal, which the Appellate Court promptly stayed, awaiting a decision in *Pryor* v. *Brignole*, 336 Conn. 933, 248 A.3d 3 (2021), in which we had certified the issue of whether a denial of a special motion to dismiss is immediately appealable. We transferred the defendants' appeal to this court for consideration along with *Pryor* and *Robinson* v. *V. D.*, Docket No. SC 20731, an appeal that the Appellate Court had also stayed and that we had also transferred because it implicated the same threshold jurisdictional issue.

## II

It is well established that, ordinarily, the denial of a motion to dismiss—even on jurisdictional grounds, which was not the basis of the defendants' special motion—is an interlocutory ruling, not a final judgment for purposes of appeal. See, e.g., *In re Teagan K.-O.*, 335 Conn. 745, 754, 242 A.3d 59 (2020). Nor is the denial of a motion for summary judgment or a motion to strike ordinarily an appealable final judgment. See, e.g., *Lighthouse Landings, Inc.* v. *Connecticut Light & Power Co.*, 300 Conn. 325, 328 n.3, 15 A.3d 601 (2011) (motion for summary judgment); *White* v. *White*, 42 Conn. App. 747, 749, 680 A.2d 1368 (1996) (motion to strike).

The constitutional nature of the defense the defendants have posed in the present case compels no different result. This is because it is also well established that the right to free speech protected by the first amendment confers an immunity from liability, which

may be raised as a defense; see, e.g., *Gleason* v. *Smolinski*, 319 Conn. 394, 406–407, 125 A.3d 920 (2015); see also *Snyder* v. *Phelps*, 562 U.S. 443, 451–52, 131 S. Ct. 1207, 179 L. Ed. 2d 172 (2011); and, if unsuccessful, may be appealed upon the entry of an adverse final judgment. See, e.g., *Segni* v. *Commercial Office of Spain*, 816 F.2d 344, 345 (7th Cir. 1987) ("[i]t's quite a leap . . . to say that anytime a motion to dismiss on [f]irst [a]mendment grounds is denied, the defendant can appeal the denial, on the theory that the failure to dismiss the suit at the earliest opportunity is itself an infringement of the defendant's [f]irst [a]mendment rights").

Therefore, the defendants do not dispute, and the majority concedes, that, prior to January 1, 2018, the effective date of No. 17-71, § 1, of the 2017 Public Acts (P.A. 17-71), codified at § 52-196a, the defendants' constitutional rights to free speech provided them not with immunity from suit but only with immunity from liability for claims premised on the exercise of those rights. It follows that, before the passage of § 52-196a and today's majority decision, a defendant's unsuccessful motion (to dismiss, to strike, or for summary judgment) based on a first amendment defense would not have been immediately appealable.

### III

In 2017, the legislature passed P.A. 17-71, § 1, which became effective on January 1, 2018, and permits those against whom lawsuits have been filed to pursue a special motion to dismiss early in the litigation, raising as a defense that the underlying action arose out of the exercise of their constitutional rights to free speech, to free association, or to petition the government. As described previously, the statute permits any defendant filing a motion posing such a defense to require plaintiffs in short order to demonstrate that their case has merit, factually and legally. In particular, the statute directs the trial court to grant the special motion to dismiss if the defendants make "an initial showing, by a preponderance of the evidence, that the opposing party's complaint, counterclaim or cross claim is based on the moving party's exercise of" his constitutional rights "in connection with a matter of public concern . . . ." General Statutes § 52-196a (e) (3). The plaintiffs can defeat the special motion to dismiss if they "[set] forth with particularity the circumstances giving rise to the complaint . . . and [demonstrate] to the court that there is probable cause, considering all [of the defendants'] valid [constitutional] defenses, that the [plaintiffs] will prevail on the merits of the complaint . . . ." General Statutes § 52-196a (e) (3).

Whether and how to manage and accelerate proceedings at the trial court level is one policy determination that the legislature clearly and unambiguously provided for in § 52-196a, directing in significant detail how a special motion to dismiss should be filed and resolved. In the present case, for example, following these directives closely, the trial court ruled on the motion in just over seven months from the filing of the complaint.[7]

Whether to permit one party to halt the trial court proceedings and to launch the parties on an appellate track in the event the motion is denied is an altogether different policy determination, however, about which the legislature said almost nothing. An interlocutory appeal takes an action that the plaintiffs have a constitutional right to file and pursue and deposits it in an entirely different court system not known for its dispatch. If permitted, this appeal comes after the plaintiffs have made a preliminary showing, in short order and "with particularity," that there is probable cause that they will prevail on their complaint, despite the defendants' constitutional challenges. General Statutes § 52-196a (e) (3). Moreover, appellate review of these rulings—often requiring findings of fact by which to measure the plaintiffs' claims and the defendants' arguments of intrusion on protected rights—will have to be undertaken on a record constructed hastily, and intentionally so. This is not a recipe for the solemn and meticulous scrutiny often required to adjudicate weighty constitutional issues, and I would not presume that the legislature intended our appellate courts to take up these cases on an interlocutory basis without more specific legislative direction.

Nevertheless, the defendants claim, and the majority today agrees, that § 52-196a not only changed the procedure by which defendants may speedily contest the merits of a lawsuit at the trial level but also permits defendants to take an appeal when that procedure is unsuccessful. I disagree.

IV

In Connecticut, "an appeal is purely a statutory privilege accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are met." (Internal quotation marks omitted.) *State* v. *Coleman*, 202 Conn. 86, 88–89, 519 A.2d 1201 (1987). That is, we do not determine as a policy matter whether to afford litigants an appeal from a particular ruling, let alone an interlocutory ruling: only the legislature does so. There are two ways that the legislature may signal to our courts its policy choice to permit

interlocutory appeals. Both ways require a close examination of the statutory language, pursuant to § 1-2z, which I do not agree that the majority has undertaken.

A

The first is the clear and unambiguous way, namely, the legislature could have made explicit in § 52-196a that the denial of a special motion to dismiss is immediately appealable. Anti-SLAPP statutes in numerous other states contain precisely this kind of specific language permitting interlocutory appeals from the denial of similar motions. Among the states with specific language authorizing an interlocutory appeal are those whose legislation served as a model for Connecticut's anti-SLAPP statute, according to the very legislative history the majority cites. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 8, 2017 Sess., p. 4602, testimony of Klarn DePalma, vice president and general manager, WFSB-TV (noting that language of Connecticut's anti-SLAPP statute is most similar to statutes from California, Oregon, Texas and Washington); see also Cal. Civ. Proc. Code § 425.16 (i) (Deering Supp. 2021); Or. Rev. Stat. § 31.150 et seq. (2017); Tex. Civ. Prac. & Rem. Code Ann. § 27.008 (West 2020); Wn. Rev. Code Ann. § 4.105.080 (West 2021). Also, among the states with explicit statutory appeal language are those that made the right to an interlocutory appeal explicit only after a court had ruled that it would not infer such a right. See *Wynn* v. *Bloom*, 852 Fed. Appx. 262, 262 n.1 (9th Cir. 2021) (Nevada); *Schwern* v. *Plunkett*, 845 F.3d 1241, 1244 (9th Cir. 2017) (Oregon). Although the absence of explicit language authorizing an immediate appeal from the denial of a special motion to dismiss is not determinative of whether such a right exists; see, e.g., *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, 279 Conn. 220, 238, 901 A.2d 1164 (2006); Connecticut's legislature has demonstrated in several contexts that, when it intends to permit an interlocutory ruling to be immediately appealable, it knows how to authorize it expressly.[8] Two of these enabling statutes in particular warrant closer examination in comparison to § 52-196a.

The first is the prejudgment remedy statute, General Statutes § 52-278*l* (a),[9] which the majority itself cites because it is mentioned in the legislative history of § 52-196a. As the majority points out, then Representative William Tong described the nature of the special motion to dismiss proceeding under § 52-196a as a "substantial hearing" or "[mini-trial] at the outset," akin to a prejudgment remedy hearing. 60 H.R. Proc., Pt. 16, 2017 Sess., p. 6945. It is true that both statutes provide for a trial

court's early examination of whether the statutory requirements have been satisfied. The difference, of course, is that § 52-278*l* expressly authorizes an appeal from an order "granting or denying a prejudgment remedy" and includes among its provisions a shortened appeal period (seven days) and authority for the trial court to order a stay in the event of an appeal if the party taking the appeal posts a bond, thus protecting the adverse party from any damages that may result from the stay. Had Representative Tong been asked to comment further on the analogy between a ruling on a prejudgment remedy and the denial of a special motion to dismiss, he would have had to observe that our anti-SLAPP statute contains no appeal provision, unlike § 52-278*l* and numerous anti-SLAPP statutes in other states.[10]

Also worth examining is General Statutes § 31-118, concerning labor injunctions. That statute not only explicitly authorizes an appeal when a court "issues or denies" a temporary injunction arising out of a labor dispute but also provides its own distinct appeal period (two weeks) and directs the parties and the reviewing court on the appellate procedure to undertake. General Statutes § 31-118. In particular, the statute requires that "the record shall be . . . made available to counsel within two weeks"; "[t]he appellant shall file his brief within two weeks . . . and the appellee within one week thereafter"; no extensions of time are allowed except for "illness or other acts of God"; the appeal must be heard no "later than two weeks from the date the appeal is perfected"; and the appeal "shall take precedence over all matters except older matters of the same character." General Statutes § 31-118. Section 52-196a contains none of these details.

Both § 31-118 and § 52-278*l*, with their explicit appeal provisions, provide particularly apt comparisons to our anti-SLAPP statute because they involve similar preliminary determinations *at the trial level*. See General Statutes § 31-115 (temporary injunctive relief requires "finding of facts by the court" that (a) unlawful acts have been threatened and are forthcoming; (b) substantial and irreparable injury; (c) harm to complainant; (d) no adequate remedy at law; and (e) inadequate protection of complainant's property); General Statutes § 52-278d (a) (1) ("there is probable cause that a judgment in the amount of the prejudgment remedy sought . . . will be rendered in the matter in favor of the plaintiff"). Whereas the legislature has decided as a policy matter that rulings on temporary labor injunctions and prejudgment remedies are worthy of interlocutory appellate

review by the nonprevailing party, as the majority concedes, the legislature has made no such explicit policy decision regarding our anti-SLAPP statute.

The only portion of the statute that arguably hints at a right to appeal the denial of a special motion to dismiss is subsection (d) of § 52-196a, which provides in relevant part: "The court shall stay all discovery upon the filing of a special motion to dismiss. The stay of discovery shall remain in effect until the court grants or denies the special motion to dismiss and any interlocutory appeal thereof. . . ." This language is a far cry from authorizing an interlocutory appeal, however, and the majority does not contend otherwise. Staying discovery until the trial court rules on a special motion to dismiss and an appellate court rules on a possible interlocutory appeal does little to imply that the legislature intended statutorily to grant defendants the right to an immediate appeal. At most, this language shows that the legislature was aware that, in unique circumstances, such as when a party files a public interest appeal pursuant to General Statutes § 52-265a, a denial of a special motion to dismiss may be immediately appealable.[11] See *Lafferty* v. *Jones*, 336 Conn. 332, 336–38 and n.3, 246 A.3d 429 (2020) (granting petition to file expedited public interest appeal, pursuant to § 52-265a, from trial court's sanction revoking defendants' opportunity to pursue special motion to dismiss under § 52-196a), cert. denied, U.S.     , 141 S. Ct. 2467, 209 L. Ed. 2d 529 (2021). The present appeal could have been a viable candidate for certification under that statute. But acknowledging in a statute that appellate courts could have the authority to hear interlocutory appeals through another jurisdictional avenue is not the same as providing a right to appeal in the statute itself.

B

The majority is correct that we have said that the absence of specific language conferring the right to appeal "is not determinative of whether such a right exists. . . . Rather, we presume that the legislature is aware of our [long-standing] final judgment jurisprudence." (Citation omitted.) *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, supra, 279 Conn. 238. This leads to the second way in which the legislature can signal to appellate courts its policy choice to permit interlocutory appeals. Specifically, the legislature can include language in the statute that satisfies the test articulated in *Curcio*. See id. That is, we presume that the legislature has taken note of the "circumstances in which an interlocutory ruling is deemed [by this court] to have the attributes of a final judgment"

under our appeal statutes "so as to permit an immediate appeal." *Saunders* v. *KDFBS, LLC*, 335 Conn. 586, 591, 239 A.3d 1162 (2020); see *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, supra, 238.

Specifically, we have held that an "otherwise interlocutory order is appealable in two circumstances: (1) [when] the order or action terminates a separate and distinct proceeding, [and] (2) [when] the order or action so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio*, supra, 191 Conn. 31. No one contends that the first prong of *Curcio* is implicated in the present case or by § 52-196a. Rather, the only question is whether the denial of a special motion to dismiss satisfies the second prong of the *Curcio* test, which "focuses on the nature of the right involved. It requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the [parties] irreparably harmed unless they may immediately appeal." (Internal quotation marks omitted.) *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, supra, 279 Conn. 226.

1

In undertaking a second prong *Curcio* analysis, the " 'essential predicate' " is to identify properly the nature of the right implicated. Id., 231. "The right of the party must be of a statutory or constitutional nature."[12] E. Prescott, supra, § 3-1:2.3, p. 92. With the lack of interlocutory review not implicating any constitutional right, the majority describes the statutory right at stake in the present case several ways. For example, quoting our decision in *Convalescent Center of Bloomfield, Inc.* v. *Dept. of Income Maintenance*, 208 Conn. 187, 195, 544 A.2d 604 (1988), the majority suggests that, as in that case, § 52-196a protects "the right not to have to go to trial on the merits" or the right "to avoid litigation on the merits that can be costly and burdensome . . . ."[13] (Emphasis omitted; internal quotation marks omitted.) It also refers to a "right to avoid litigation," a "right to avoid the costly and onerous litigation process altogether," a "right to avoid costly and burdensome litigation on the merits," and a right that "shields [the defendants] from litigation akin to the right against double jeopardy or the other types of immunity from suit in the civil context . . . ." (Emphasis omitted; internal quotation marks omitted.) None of these phrases appears in the statute's text.

The majority does not explain why it eschews charac-

terizing the nature of the right implicated by § 52-196a as "immunity from suit . . . ." Instead, the majority forgoes the required § 1-2z analysis and characterizes this right as merely being akin to immunity from suit, despite the fact that this kind of analysis applies only to common-law defenses. See footnote 13 of this opinion. If asked to define the phrase "immunity from suit" for a legal dictionary, however, a lexicographer would be hard-pressed to craft a better definition than any of the phrases the majority uses to describe the right it claims the statute protects and that I compiled in the preceding paragraph. In fact, our case law defines immunity from suit precisely using these very phrases. For example, we have often said that "the essence of the protection of immunity from suit is an entitlement not to stand trial or face the other burdens of litigation." (Internal quotation marks omitted.) *Blakely* v. *Danbury Hospital*, 323 Conn. 741, 746, 150 A.3d 1109 (2016). We have also described state sovereign immunity, which is an immunity from suit, as a "doctrine [that] protects against suit as well as liability—in effect, against having to litigate at all." *Shay* v. *Rossi*, 253 Conn. 134, 166, 749 A.2d 1147 (2000), overruled in part on other grounds by *Miller* v. *Egan*, 265 Conn. 301, 828 A.2d 549 (2003).

Using the proper legal parlance is important because, when we seek to define statutory rights with such significant consequences, we should speak precisely so that we may expect the legislature also to speak precisely when granting these rights. Words matter. And, as with all statutory interpretation exercises this court undertakes, it is elementary that § 1-2z governs our exercise of divining the precise nature of the statutory right at issue, as we have recognized very recently.

For example, in *Sena* v. *American Medical Response of Connecticut, Inc.*, 333 Conn. 30, 213 A.3d 1110 (2019), we looked "to [General Statutes] § 28-13 to determine the nature of the immunity afforded to political subdivisions" when they are sued for actions taken by their police and fire departments in response to declared state emergencies. Id., 45. We described this issue as "a question of statutory construction"; id.; and, therefore, pursuant to § 1-2z, we first examined the plain language of § 28-13, which we determined to be ambiguous. See id., 47–48. Only then did § 1-2z permit us to consider the relevant legislative history, which led us to ultimately conclude that § 28-13 provided immunity from suit. See id., 48–52. Based on this conclusion, we held that the denial of a motion for summary judgment premised on the immunity conferred by § 28-13 was immediately appealable under the second prong of *Curcio*. See id.,

52; see also *Trinity Christian School* v. *Commission on Human Rights & Opportunities*, supra, 329 Conn. 694 (under § 1-2z, we must first look to statute's language to determine whether legislature provided any indication that it intended to grant immunity from suit); *Harger* v. *Odlum*, 153 Conn. App. 764, 769–73, 107 A.3d 430 (2014) (determining pursuant to § 1-2z that General Statutes § 52-190a does not grant immunity from suit, and thus pretrial denials of this statutory right are not immediately appealable under second prong of *Curcio*).

Unlike in *Sena*, the majority in the present case, in its search for the nature of the right conferred on defendants by § 52-196a, only briefly examines any of the statute's plain language and, when it does, does not consider the language of subsection (b), in which the so-called "right" is described. Neither does the majority consider whether any language is ambiguous, which could arguably justify the majority's reference to particular legislators' statements about the statute's purpose that nevertheless do not refer to immunity from suit or a right to appeal. Instead, the majority resorts to characterizing the nature of the right found in § 52-196a, ultimately concluding that the right conferred by the statute may be vindicated only if the defendant has a right to an interlocutory appeal. Since 2003 and the passage of § 1-2z, however, to guard against possibly inaccurate portrayals of legislative intent, the legislature has directed us to examine a statute's text first, along with "its relationship to other statutes." General Statutes § 1-2z. We do not consider extratextual evidence, such as legislative history, unless the text is ambiguous or unless it yields absurd or unworkable results. See General Statutes § 1-2z.

Because I believe that the majority's description of the right is merely another way of describing an immunity from suit, I first undertake what I consider to be a proper § 1-2z analysis of § 52-196a to determine whether the legislature, not having explicitly created a right to an interlocutory appeal in the statute; see part IV A of this opinion; nonetheless manifested an intent to confer on defendants a right to immunity from suit, the denial of which, under our case law, creates a right to an immediate interlocutory appeal. I conclude that the legislature did not do so.[14] Nor do I agree with the majority that the legislative history it recounts supports a conclusion that the legislature intended to provide immunity from suit by granting defendants a right not to litigate akin to immunity from suit.

2

A corollary to the "presum[ption] that the legislature is aware of our [long-standing] final judgment jurisprudence"; *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, supra, 279 Conn. 238; is that the legislature is also aware of how to signal under *Curcio* that the denial of a right is immediately appealable. As I discussed previously, and as guided by § 1-2z, this is particularly true when determining whether a statute grants immunity from suit. Specifically, we have stated that, "when the legislature intends to confer immunity from liability or from suit, it does so in *distinctive and unmistakable terms* . . . ." (Emphasis added; footnotes omitted.) *Trinity Christian School* v. *Commission on Human Rights & Opportunities*, supra, 329 Conn. 696. For example, we previously have noted specific examples of statutory language conferring immunity from suit, including the phrases, "no action may be brought" and "shall not be liable . . . ." (Footnotes omitted; internal quotation marks omitted.) Id.; see General Statutes § 52-557e ("[n]o action may be brought to recover damages against any licensed physician for any decision or action taken by him as a member of a hospital utilization review committee"); General Statutes § 52-557o ("[n]o action for trespass shall lie"); see also *Sena* v. *American Medical Response of Connecticut, Inc.*, supra, 333 Conn. 47–52 (holding that denial of motion for summary judgment premised on § 28-13 was immediately appealable under second prong of *Curcio* because statute provided immunity from suit based on language that attorney general must " 'appear for and defend' " political subdivisions, as well as legislative history emphasizing state's taking on cost and burdens of litigation). Applying these principles to the text of § 52-196a, I cannot locate in my review of the statute's plain language any "distinctive and unmistakable terms" even suggesting an immunity from suit or an immunity of any kind. *Trinity Christian School* v. *Commission on Human Rights & Opportunities*, supra, 696.

My review begins with subsection (b) of § 52-196a, which actually confers the right to file the special motion. In relevant part, § 52-196a (b) provides: "In any civil action in which a party files a complaint . . . against an opposing party that is based on the opposing party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, *such opposing party may file* a special motion to dismiss the complaint . . . ." (Emphasis added.) The sub-

sections that follow subsection (b) detail the procedure a defendant must follow to go about exercising this right. For example, subsection (c) sets the deadline for when a defendant must file a special motion to dismiss at thirty days from the return date, absent good cause found by the trial court. Subsection (d) provides for a stay of discovery during the pendency of the motion, which, for the same reasons explained in part IV A of this opinion as to why this language does not support a statutory right to appeal, also does not provide any kind of immunity. Subsection (e) governs when and how the trial court must conduct a hearing on the motion. Specifically, the trial court is required to conduct "an expedited hearing" and must "rule on a special motion to dismiss as soon as practicable." General Statutes § 52-196a (e) (1) and (4). Finally, subsection (f) not only does not show any legislative intent to create an immunity from suit but supports my analysis that this statute provides only a procedural benefit to defendants. Subsection (f), the fee shifting provision, provides defendants with a significant financial benefit in the event that a special motion to dismiss is improperly denied. In particular, if unsuccessful at trial, a defendant may raise a first amendment defense on appeal, and, if successful, this court may hold that the special motion to dismiss was improperly denied, may vacate the judgment, and then may remand the case to the trial court with direction to dismiss the plaintiff's action and to determine the appropriate award of costs and attorney's fees under subsection (f). See *Gurliacci* v. *Mayer*, 218 Conn. 531, 576, 590 A.2d 914 (1991) (requiring trial court to determine attorney's fees on remand); *Medical Device Solutions, LLC* v. *Aferzon*, 207 Conn. App. 707, 782, 264 A.3d 130 (remanding case to "[trial] court with instructions to determine, if possible, what portion of the fees and costs it awarded under [Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. was] reasonably incurred to litigate that portion of the CUTPA claim that was not barred by the statute of limitations"), cert. denied, 340 Conn. 911, 264 A.3d 94 (2021). Additionally, if successful at trial, the defendant may then file a motion for attorney's fees with the trial court. See Practice Book § 11-21 ("[m]otions for attorney's fees shall be filed with the trial court within thirty days following the date on which the final judgment of the trial court was rendered").

Section 52-196a does not contain the kind of "unmistakable terms" that have led us to conclude that a statute creates a right to "immunity from suit," whether described as such by our case law in this usual way, or described synonymously as a "right to avoid litiga-

tion," or a "right not to have to go to trial on the merits," or a right "akin" to immunity from suit. Rather, the plain language of § 52-196a clearly and unambiguously creates only a new *procedure* for defendants to raise as early as possible in the litigation their *preexisting* right to immunity from liability when the underlying defense is premised on their exercise of a first amendment constitutional right or state constitutional analogue. The legislature plainly wanted to confer on defendants the procedural right to raise this defense in the trial court before being burdened by the costs and inconvenience of discovery. But, as this court has previously recognized, "[t]here is a crucial distinction to be drawn between a right not to be tried and a right whose remedy requires the dismissal of charges. . . . The former necessarily falls into the category of rights that can be enjoyed only if vindicated prior to trial. The latter does not."[15] (Internal quotation marks omitted.) *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, supra, 279 Conn. 232. In striking a balance between the rights of plaintiffs and defendants, the legislature's decision not to include distinctive and unmistakable language providing a right to immunity from suit should lead us to conclude that the legislature did not view the right to an immediate appeal as within that bundle of rights critical to the policy it was implementing—i.e., a right that "can be enjoyed only if vindicated prior to trial." (Internal quotation marks omitted.) Id.; see *Englert* v. *MacDonell*, 551 F.3d 1099, 1105 (9th Cir. 2009) (collateral order doctrine was not satisfied by Oregon's anti-SLAPP statute "because it was not intended to provide a right not to be tried, as distinguished from a right to have the legal sufficiency of the evidence underlying the complaint reviewed by a nisi prius [i.e., trial] judge before a defendant is required to undergo the burden and expense of a trial").

In the context of *Curcio*'s second prong, "[w]e have [also] said that the claimed right cannot be 'a contingent right created by statute and subject to the discretion of the trial court'; *State* v. *Garcia*, 233 Conn. 44, 66, 658 A.2d 947 (1995) [overruled in part on other grounds sub silentio by *Sell* v. *United States*, 539 U.S. 166, 123 S. Ct. 2174, 156 L. Ed. 2d 197 (2003)]; rather, the right must exist independently of the order from which the appeal is taken." *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, supra, 279 Conn. 231. In the present case, the rights created by § 52-196a (e) (3) are contingent on "an initial showing, by a preponderance of the evidence," by the defendant, and a "probable cause" showing by the plaintiff. The legislature's use of the phrases "initial showing" and "probable cause,"

by their nature, strongly suggests that the legislature contemplated the trial court's exercising some degree of discretion. See *TES Franchising, LLC* v. *Feldman*, 286 Conn. 132, 137, 943 A.2d 406 (2008) (in ruling on application for prejudgment remedy, "[i]n its determination of probable cause, the trial court is vested with broad discretion" (internal quotation marks omitted)). Moreover, this relatively low probable cause burden necessary for the plaintiff to defeat the special motion to dismiss demonstrates that the legislature recognized that many special motions to dismiss may be denied, and yet it decided not to expressly create a right to immunity from suit, undermining any argument that an immediate appeal is necessary to vindicate the statutory right at issue.

I draw from the statutory language that the legislature intended for the trial court, if called on by a defendant, to act as a gatekeeper, early in the litigation and in an expedited fashion, to consider and rule on the viability of the alleged constitutional violations before a defendant is burdened by the costs and inconvenience of discovery. In the words of the United States Court of Appeals for the Ninth Circuit construing a similarly worded statute, the Oregon legislature provided the defendant with the right to have the "legal sufficiency of the evidence underlying the complaint reviewed by a nisi prius [i.e., trial] judge . . . ." *Englert* v. *MacDonell*, supra, 551 F.3d 1105.[16] This is eminently sensible because, when the trial court is tasked with acting as a gatekeeper, which is most often a trial court function; see, e.g., *State* v. *Schiappa*, 248 Conn. 132, 163 n.39, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999); all that is required is a preliminary showing that the party may prevail on the facts and law, which may lead to an incomplete or inadequate record for appellate review of constitutional questions. See part V of this opinion.

Thus, I disagree with the majority that the plain language of § 52-196a creates a right—"akin" or otherwise—to immunity from suit. Rather, under our well established rules of statutory construction, the statute's plain language clearly and unambiguously creates a new and valuable *procedure* for a defendant to raise, as early as possible in the litigation, his or her preexisting right to immunity from liability when the underlying defense is premised on his or her exercise of a first amendment right or state constitutional analogue.

3

Even if I were to agree that the language of § 52-196a

is ambiguous with respect to the nature of the statutory right created (which not even the majority contends), I disagree that the legislative history supports a conclusion that the legislature intended to create a right akin to immunity from suit.

First, I make an observation about reliance on legislative history in this context generally. Given the primacy of legislative text under § 1-2z and the traditional approach of strictly construing statutory appellate rights; see E. Prescott, supra, § 2-1:1.2, p. 44; it is at least arguable that we should not be looking to extraneous sources, like legislative history, for something that the legislature can say explicitly and relies on us not to infer. Cf. *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, 293 Conn. 382, 390, 978 A.2d 49 (2009) ("the existence of uncertainty in a statute with regard to [a sovereign immunity] waiver is not an ambiguity but, rather, an answer").

Putting that aside, in my view, the majority reads far more into statements made by particular legislators than can reasonably be inferred. Of course, not a single legislator mentioned the idea of an interlocutory appeal. I do not believe that the legislature would have us review the statements of individual legislators just to get a sense of the policy the legislature was trying to effect and then extrapolate from there whether going one step further (in this case, an interlocutory appeal) would, in our view, be consistent with that policy and therefore conclude that the legislature must have so intended.

The majority essentially reads the legislative history, sub silentio, to confer on defendants a right to an error-free gatekeeper. As an example, the majority writes that "[t]he extensive legislative history of the statute indicates that the legislature was particularly concerned about defendants laboring under the burden of having to defend against SLAPP suits, which are by definition frivolous and oppressive, as a consequence of having exercised their first amendment rights." The majority's characterization of the statutory purpose is inarguable: to deter and weed out abusive and frivolous claims "designed to chill free speech and the expression of constitutional rights . . . ." (Emphasis omitted; internal quotation marks omitted.) But the majority holds that the legislative history makes clear that this weeding out function extends beyond the trial court, the usual gatekeeper. In its view, the weeding out process is not complete until an appellate court has reviewed a trial judge's very preliminary determinations of the defendant's "initial showing" and the plaintiff's showing of

"probable cause" that he will prevail on the merits. See part V of this opinion. The majority *has* to read this into the legislative history because not once does a legislator mention extending the gatekeeping function beyond the trial court, to an appellate court's interlocutory review, if a defendant, after availing himself of the significant benefits of the trial court's speedy determination, is unsuccessful in convincing the trial court of the merits of its special motion to dismiss. In my view, the available legislative history is far too thin a reed on which to upset the usual rule that all preserved issues are reviewable when an aggrieved party appeals at the end of the case, and not until then.

I read the scant legislative history to lean the other way: against permitting an interlocutory appeal. Specifically, Representative Tong explicitly clarified that "it's a bill to protect people against *liabilities* . . . ." (Emphasis added.) 60 H.R. Proc., supra, p. 6879. Nowhere in the legislative history is there any reference to or suggestion of the statute's providing immunity from suit. Rather, as Representative Tong explicitly stated, the statute's intended purpose is to "[provide] for a special motion to dismiss so that early in the process somebody who's speaking and [has] exercised [his] constitutional rights can *try* to dismiss a frivolous or abusive claim that has no merit and [short-circuit] a litigation where it might otherwise cost a great deal of money to continue to prosecute." (Emphasis added.) Id.; see id., p. 6884, remarks of Representative Tong. Like the language contained in the statute, Representative Tong's statement indicates only that the legislature intended to create a process to weed out frivolous and abusive lawsuits early in the litigation so as to prevent the needless expense and burdens of litigation. In other words, the legislature wanted to ensure that defendants did not have to incur the cost of litigation until a gatekeeper—the trial court—determined that there is "probable cause" that the lawsuit has merit. Id., pp. 6905, 6909, remarks of Representative Tong. The lack of an immediate appeal from a denial of a motion to dismiss does not undermine the legislature's goal of ensuring that this gatekeeping function occurs "as quickly as possible to avoid . . . undue litigation and abuse of the process . . . ." Id., p. 6921, remarks of Representative Tong.

Importantly, the legislative history shows that § 52-196a was the result of balancing the two interests at stake here: (1) the defendant's right to free speech, and (2) the plaintiff's right to have a claim heard. See id., pp. 6881–82, remarks of Representative Rosa C. Rebimbas ("this legislation does provide for an expedited hearing

and the purpose in that, again, is as the good [c]hairman had indicated it is a gentle balance between free speech by being able to resolve any issues once it's brought before the court's attention"); id., p. 6909, remarks of Representative Tong ("the claimant who has generally a right to have his or her claims heard"). By providing a procedural remedy, not a right to immunity from suit, the legislature strikes this balance. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 9, 2017 Sess., pp., 4779–80, testimony of Eric Parker, on air anchor and chief investigative reporter, WFSB-TV ("It sets up a clear test. If the complaint shows a bare minimum of validity, it moves forward. If it does not, the defendant can end the litigation quickly and without the months of delays and expenses that come with it. It doesn't mean valid lawsuits won't get prosecuted. Those claims do exist and they should be allowed to move forward. The plaintiffs deserve every ounce of the rights the courts give them."). Thus, I do not read the legislative history to do any more than the text of the statute explicitly says, i.e., speak to the creation of a procedure that permits a defendant to obtain prompt review of an alleged SLAPP lawsuit.

4

The majority cites to a handful of cases from other jurisdictions that it claims apply "a *Curcio*-esque analysis" and support its conclusion that an interlocutory appeal lies from the "denial of a special motion to dismiss . . . ."[17] The majority tells us that this case law is "particularly instructive" because of Senator John A. Kissel's description of Connecticut's anti-SLAPP statute as "a compilation of some of the best [anti-SLAPP] laws out there from throughout the United States." 60 S. Proc., Pt. 6, 2017 Sess., p. 2236; see also 60 H.R. Proc., supra, p. 6884, remarks of Representative Tong ("twenty-nine other states have adopted . . . legislation very similar to the construct we have here"). The majority would apparently have us infer from such a general legislative statement that permitting an interlocutory appeal from a trial judge's considered denial of a special motion to dismiss would place Connecticut's anti-SLAPP statute among "the best laws out there . . . ." This is the majority's own value judgment. Whether I agree with that judgment is not important. There are states that provide for interlocutory appeals and some that do not.

What is important is that, having compiled examples of "the best laws out there," the legislature chose not to include what at least as many jurisdictions as the majority cites specifically did include: a statute explic-

itly permitting an interlocutory appeal.[18] See Cal. Civ. Proc. Code § 904.1 (a) (13) (Deering Supp. 2021); Ga. Code Ann. § 9-11-11.1 (e) (Supp. 2019); Nev. Rev. Stat. § 41.670 (4) (2019); N.M. Stat. § 38-2-9.1 (C) (Cum. Supp. 2015); Okla. Stat. Ann. tit. 12, § 1437 (West Cum. Supp. 2021); 27 Pa. Stat. and Cons. Stat. Ann. § 8303 (West 2009); Tenn. Code Ann. § 20-17-106 (West Supp. 2019); Tex. Civ. Prac. & Rem. Code Ann. § 27.008 (West 2020); Wn. Rev. Code Ann. § 4.105.080 (West 2021); see also Ill. Sup. Ct. R. 306 (a) (9) (West 2020). In fact, although the legislative history of § 52-196a recites that our anti-SLAPP statute is most similar in language to the statutes from California, Oregon, Texas and Washington; see Conn. Joint Standing Committee Hearings, Judiciary, Pt. 8, 2017 Sess., p. 4602; in 2017, when the legislature enacted § 52-196a, the anti-SLAPP statutes in California, Texas, and Washington included language explicitly authorizing an immediate appeal from a denial of a motion under those statutes. See 2014 Cal. Stat. c. 71, § 17; see also Tex. Civ. Prac. & Rem. Code Ann. § 27.008 (West 2015); Wn. Rev. Code Ann. § 4.24.525 (5) (d) (West 2017).

The legislature's reliance on Oregon's anti-SLAPP statute is also important to note because the Oregon legislature had amended its statute in 2009—before Connecticut's legislature enacted § 52-196a—to add language permitting an immediate appeal. 2009 Or. Laws c. 449, §§ 1 and 3 (effective January 1, 2010); see House Committee on Judiciary, Staff Measure Summary on Senate Bill No. 543 (amending Oregon law to authorize "an immediate appeal [from] the denial of an anti-SLAPP . . . motion"). The original version of Oregon's statute was explicitly premised on California's anti-SLAPP statute, except that it did not include language providing for an immediate right to appeal from the denial of a special motion to strike, as California's did. See *Englert* v. *MacDonell*, supra, 551 F.3d 1105–1107; see also Or. Rev. Stat. §§ 30.142 and 30.144 (2001). The statutory language also did not include a right not to go to trial and thus did not provide immunity from suit. See *Englert* v. *MacDonell*, supra, 1105–1107. Because of this, courts had held that the denial of a motion under Oregon's anti-SLAPP statute was not immediately appealable. See, e.g., id. In response, the Oregon legislature then amended the statute to specifically provide the right to appeal. See *Schwern* v. *Plunkett*, supra, 845 F.3d 1244. My conclusion that Connecticut's legislature did not intend to provide either an immediate right to appeal or immunity from suit is supported by its decision not to include specific language authorizing an interlocutory appeal, as other state legislatures had, or a right to

immunity from suit, despite presumably knowing that the absence of such language, as in the original version of Oregon's anti-SLAPP statute, would likely lead a court to conclude that there is no right to an immediate appeal.

Cases that have held that the denial of a motion under an anti-SLAPP statute is immediately appealable, notwithstanding the lack of explicit language granting the right to appeal, are distinguishable from the present case in one of three ways: (1) the anti-SLAPP statute at issue contained language significantly different from that found in § 52-196a;[19] (2) the legislative history of the particular anti-SLAPP statute demonstrated compellingly that the legislature in fact intended to create immunity from suit, which the history of § 52-196a does not demonstrate;[20] or, most often, (3) the particular court's statutory construction analysis was not governed by principles consistent with § 1-2z or our case law regarding statutory immunity from suit.[21]

More consistent with the analysis the legislature has directed Connecticut courts to undertake under § 1-2z are cases from other courts that have reached the opposite conclusion from that of the majority based solely on scrutiny of the particular state statute at issue under established state law principles more consistent with § 1-2z. For example, as explained, courts have interpreted Oregon's original version of its anti-SLAPP statute, which has language similar to our statute, as not creating either a right to an immediate appeal or immunity from suit and, thus, holding that the denial of a motion under its statute was not appealable. See *Englert* v. *MacDonell*, supra, 551 F.3d 1105–1107 (interpreting what is now Or. Rev. Stat. §§ 31.150 and 31.152, and holding that defendants could not immediately appeal from trial court's order denying special motion to strike under collateral order doctrine). Similarly, courts have held that denials of motions filed under Nevada's original version of its anti-SLAPP statute, which, like Oregon's original version, did not include an explicit right to appeal or immunity from suit, were not immediately appealable because "the values underlying th[is] particular anti-SLAPP statute can be satisfied through the normal appellate process."[22] *Metabolic Research, Inc.* v. *Ferrell*, 693 F.3d 795, 800 (9th Cir. 2012); see id., 801–802 (citing Nevada case law in determining that denial of special motion to dismiss under Nevada's anti-SLAPP statute was not immediately appealable under collateral order doctrine because statute did not expressly provide for immediate right to appeal or establish immunity from suit).

Thus, it is only fair to say about the case law from other jurisdictions that courts in those states review the particular language of their anti-SLAPP legislation under their own rules of construction. This court must do the same.

V

The majority responds to the plaintiffs' floodgates argument (i.e., that permitting interlocutory appeals from denials of special motions to dismiss will result in "endless appeals") by saying that the influx of appeals will not likely be significant. The majority is probably right. That is not *my* floodgates concern though. Rather, my concern stems from what I view as an unwarranted weakening of our final judgment jurisprudence.

Only very recently, and with some justification, members of this court have lamented the "murky state of our final judgment jurisprudence" under *Curcio*'s second prong and the expansion of the supposedly " 'narrow' " exception to our final judgment rule under that prong. *U.S. Bank National Assn.* v. *Crawford*, 333 Conn. 731, 760, 219 A.3d 744 (2019) (*McDonald, J.*, dissenting). With today's decision, I fear the murkiness has become more pronounced and the narrow exception widened further. These are the floodgates that concern me.

This uncertainty, I believe, is avoidable if we follow the traditional approach of construing strictly the right to appeal derived from statute. In employing § 1-2z principles and following our statutory construction jurisprudence in this context, we should look for and locate *explicit* language in statutes before concluding that a statute confers a right to appeal. We also should look for "distinctive and unmistakable" statutory language before concluding that a statute confers a right (any right, however characterized) that, under *Curcio*'s second prong, can be vindicated only by resort to an interlocutory appeal. *Trinity Christian School* v. *Commission on Human Rights & Opportunities*, supra, 329 Conn. 696. When it comes to appeal rights derived from Connecticut statutes, the legislature and this court have a well-developed language by which we speak to one another clearly. In the present case, the majority concedes that there is no explicit language establishing the right to appeal. Nor does the majority rely on any specific statutory language as providing immunity from suit. In my view, absent any mention whatsoever in the legislative history of an appeal from a denial of a special motion to dismiss or immunity from suit, the majority is left to postulate that the legislature intended to protect defendants from alleged SLAPP suits *so much* that, even

after a considered decision by a gatekeeping trial judge, the legislature must have intended this protection to extend to what is supposed to be a rare interlocutory appeal process. My floodgates concern is that, with respect to future second prong *Curcio* claims based on a statutory right, this court has now indicated that it will consider legislative history—specifically, whether there is any evidence regarding how strongly proponents of particular legislation felt about the rights they were conferring—to determine whether a party has the right to an immediate appeal. I would instead look for something much more explicit, and for the most obvious of reasons: because that is what I believe the legislature has directed us to do when scrutinizing statutes, and particularly statutes relied on as giving rise to the right to an interlocutory appeal.

The majority seeks to cabin its holding today by insisting that the "colorable claim" standard will limit appeals from denials of special motions to dismiss under § 52-196a. In the first instance, of course, after today's decision, *any* denial of a motion to dismiss is appealable, not just erroneous ones. A plaintiff will have to challenge the appeal as not raising a colorable claim of error for an appellate court even to consider dismissing the appeal. It is worthwhile examining what will be reviewed in these interlocutory appeals and how challenges to their colorability will necessarily be handled under the majority's announced standard.

Recall that many (or perhaps most) rulings denying special motions to dismiss will be made on the basis of probable cause determinations about the strength of the plaintiff's "initial showing," considering the defendant's valid defenses. General Statutes § 52-196a (e) (3). Those rulings are made based on a factual record the statute requires to be assembled quickly and at the most preliminary stage of the proceedings. General Statutes § 52-196a (g) ("[t]he findings or determinations made pursuant to subsections (e) and (f) of this section shall not be admitted into evidence at any later stage of the proceeding"). Therefore, many appeals from denied motions—like the present case—will be heard based on the record the parties could muster to that point.[23] Because they are preliminary rulings based on probable cause, other than in the clearest of cases—factually and legally—these rulings will likely be reviewed only for clear error. See, e.g., *TES Franchising*, *LLC* v. *Feldman*, supra, 286 Conn. 137 ("[i]n its determination of probable cause, the trial court is vested with broad discretion which is not to be overruled in the absence of clear error" (internal quotation marks omitted)); id.,

138 n.6 ("we conclude that the clear error standard in this context is a heightened standard of deference that exceeds the level of deference afforded under the abuse of discretion standard"); *Augeri* v. *C. F. Wooding Co.*, 173 Conn. 426, 429, 378 A.2d 538 (1977) ("[A]t the hearing on an application for a prejudgment remedy . . . [t]he hearing . . . is not intended to be a full-scale trial on the merits. . . . In reaching its determination of probable success on the merits [the court] is essentially weighing probabilities, and in this it must have a broad discretion."). Nonetheless, defendants are advised by today's ruling that they have a right to avoid trial that they can vindicate only by appealing. A plaintiff might challenge a defendant's appeal as "not colorable." But, as the majority today admits, a "colorable claim is one that is superficially well founded but that may ultimately be deemed invalid . . . ." (Internal quotation marks omitted.) "[T]he defendant need not convince the trial court that he necessarily will prevail; he must demonstrate simply that he *might* prevail." (Emphasis in original; internal quotation marks omitted.) This is quite a low bar. The Appellate Court, the workhorse court of our appellate system, will therefore be charged in most cases with determining whether there is superficially a well-founded basis on which the defendant *might* prevail in his appeal.[24] If the defendant overcomes this minor obstacle, the Appellate Court will move on to review the trial court's denial of the defendant's motion based on the standards of an "initial showing" and "probable cause . . . ." General Statutes § 52-196a (e)(3). Because these determinations are so fact specific and, in many instances, perhaps discretionary, it is remarkably optimistic to predict that the "line between colorable and noncolorable claims" will "become more discernable" as "our jurisprudence develops."

I know it is not lost on the majority that permitting these interlocutory appeals comes at a cost, and not only to the appellate system. If the legislature intended for these rulings to be appealed, it is within its control to authorize an immediate appeal. But in this context, plaintiffs' cases are interrupted by the special motion to dismiss procedure and ultimately delayed by an appeal from the denial in the first instance. A potentially yearslong process follows if the appeal overcomes the colorable claim standard. Plaintiffs have little recourse for their cases being stalled.[25]

Time will tell whether most appeals will survive, although today's evidence is that most will: the court today dismisses none of the three appeals before us. See, e.g., *Pryor* v. *Brignole*, 346 Conn. 534, 546,

A.3d    (2023). Time will tell also whether permitting interlocutory appeals will yield many reversals, that is, clear error in a trial court's gatekeeping, probable cause determination.

Implicit in the majority opinion is that all of this is worth it—and more important, it believes, the legislature considers it worth it—if even one defendant had a meritorious special motion to dismiss that should have been granted and he should not have been exposed to trial. No statutory scheme is error free, of course. But "[w]e do not presume error . . . ." (Internal quotation marks omitted.) *State* v. *Milner*, 325 Conn. 1, 13, 155 A.3d 730 (2017). I am not suggesting that the majority does presume error. I am suggesting that, without further explicit instruction from the legislature, I am unwilling to conclude that the legislature intended for us to expend appellate resources in a search for error in the preliminary, discretionary gatekeeping determinations of trial judges.

Accordingly, because I do not interpret § 52-196a as granting a right to an immediate appeal or to immunity from suit, the denial of the defendants' special motion to dismiss pursuant to § 52-196a was not immediately appealable. Therefore, the Appellate Court should dismiss the defendants' appeal.

Accordingly, I respectfully dissent.

[1] SLAPP stands for "strategic lawsuit against public participation . . . ." (Internal quotation marks omitted.) *Lafferty* v. *Jones*, 336 Conn. 332, 337 n.4, 246 A.3d 429 (2020), cert. denied,    U.S.    , 141 S. Ct. 2467, 209 L. Ed. 2d 529 (2021).

[2] A paradigmatic example of a SLAPP case is a "[lawsuit] directed at individual citizens of modest means for speaking publicly against [wealthy] development projects." (Internal quotation marks omitted.) *Demoulas Super Markets, Inc.* v. *Ryan*, 70 Mass. App. 259, 262, 873 N.E.2d 1168 (2007); see also, e.g., *Sipple* v. *Foundation for National Progress*, 71 Cal. App. 4th 226, 238, 83 Cal. Rptr. 2d 677 (1999), review denied, California Supreme Court, Docket No. S078979 (July 28, 1999).

[3] The constitution of Connecticut, article first, § 10, known as the "open courts provision" of the state constitution, provides in relevant part: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law . . . ."

[4] It is not clear whether the parties undertook any discovery, but no order of the court permitting discovery appears in the record.

[5] Section 52-196a (e) (1) requires the court to hold a hearing no later than sixty days after the date of the filing of the special motion to dismiss, unless, among other things, the court, "for good cause shown, is unable to schedule the hearing during the sixty-day period."

July 19, 2021, would have been the sixtieth day after the defendants filed their special motion. At a time when the courts were still hampered by COVID-19 restrictions and hearing most matters remotely, the trial court in this matter recognized that the legislature directed that the court make these motions a priority and heard the parties with admirable dispatch on the sixty-second day after the defendants filed their motion. As contemplated by § 52-196a (e) (2), both parties attached affidavits to their submissions. It does not appear that the trial court took any evidence, but the defendants asked the court to take judicial notice of the Trinity College student

handbook.

[6] Section 52-196a (a) (2) defines " '[r]ight of free speech' " as "communicating, or conduct furthering communication, in a *public forum* on a matter of public concern . . . ." (Emphasis added.)

[7] In the companion cases also released today—*Pryor* v. *Brignole*, 346 Conn. 534,    A.3d    (2023), and *Robinson* v. *V. D.*, 346 Conn. 1002,    A.3d    (2023)—the trial court in those cases also took up and ruled on the motions promptly: in *Pryor*, within about ten and one-half months from the filing of the complaint, and, in *Robinson*, within four and one-half months from the filing of the complaint.

[8] See General Statutes § 9-325 (providing for review of questions of law by Supreme Court in election cases); General Statutes § 31-118 (aggrieved party "may appeal" from grant or denial of temporary injunction in cases involving labor disputes); General Statutes § 42-110h (order granting or denying class certification in action under Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., "shall be immediately appealable by either party"); General Statutes § 51-164x (a) (review by Appellate Court of orders closing courtroom); General Statutes § 52-235 (a) (allowing for reservation of questions of law to Supreme Court or Appellate Court); General Statutes § 52-265a (a) (aggrieved party "may appeal" to Supreme Court from order or decision that involves matter of substantial public interest); General Statutes § 52-278*l* (a) (order granting or denying prejudgment remedy "shall be deemed a final judgment for purposes of appeal"); General Statutes § 52-405 ("[w]hen, in any action demanding an accounting, a judgment is rendered ordering such accounting, appeal may be had from such judgment to the Appellate Court, as if it were a final judgment"); General Statutes § 54-56e (f) ("[a]n order of the court denying a motion to dismiss the charges against a defendant who has completed such defendant's period of probation or supervision or terminating the participation of a defendant in such program shall be a final judgment for purposes of appeal").

[9] General Statutes § 52-278*l* (a) provides: "An order (1) granting or denying a prejudgment remedy following a hearing under section 52-278d or (2) granting or denying a motion to dissolve or modify a prejudgment remedy under section 52-278e or (3) granting or denying a motion to preserve an existing prejudgment remedy under section 52-278g shall be deemed a final judgment for purposes of appeal."

[10] Although we are not obliged to defer even to a formal opinion of the attorney general; see, e.g., *Crandle* v. *Connecticut State Employees Retirement Commission*, 342 Conn. 67, 82, 269 A.3d 72 (2022) (" '[a]lthough an opinion of the attorney general is not binding on a court, it is entitled to careful consideration and is generally regarded as highly persuasive' "); this obvious difference between § 52-278*l* and § 52-196a likely explains why now Attorney General Tong argues, as an amicus in *Pryor* v. *Brignole*, 346 Conn. 534,    A.3d    (2023), one of two companion cases also released today; see footnote 7 of this opinion; that § 52-196a does not create an independent interlocutory right to appeal or any right that satisfies the second prong of *Curcio*. See *Pryor* v. *Brignole*, Conn. Supreme Court Briefs & Appendices, October Term, 2022, Brief of Amicus Curiae State of Connecticut pp. 4–7.

[11] I do not rule out the possibility that, in rare circumstances involving a first amendment claim, the denial of a special motion to dismiss under § 52-196a may be immediately appealable pursuant to *Curcio*. See *Dayner* v. *Archdiocese of Hartford*, 301 Conn. 759, 769–72, 23 A.3d 1192 (2011) (pretrial denial of ministerial exception defense under first amendment was immediately appealable, not because of any right granted under any statute but because defense itself provided right to immunity from suit), overruled in part by *Hosanna-Tabor Evangelical Lutheran Church & School* v. *Equal Employment Opportunity Commission*, 565 U.S. 171, 132 S. Ct. 694, 181 L. Ed. 2d 650 (2012). I simply am not convinced that the legislature intended for all denials of special motions to dismiss under § 52-196a to be immediately appealable.

[12] Common-law rights that already are secured and would be lost without the right to an immediate appeal may also come within *Curcio*'s second prong. See, e.g., *Chadha* v. *Charlotte Hungerford Hospital*, 272 Conn. 776, 785–87, 865 A.2d 1163 (2005) (explaining why purpose of absolute immunity

under common law, protecting against threat of suit, compels conclusion that denial of motion for summary judgment on ground of such immunity gives rise to immediately appealable final judgment due to irreparable harm). No common-law right is at issue in the present case.

[13] *Convalescent Center of Bloomfield, Inc*. v. *Dept. of Income Maintenance*, supra, 208 Conn. 196–202, involved the common-law defenses of collateral estoppel and res judicata. The majority's analogy to this court's case law holding that the pretrial denial of those common-law defenses, as well as immunity for statements made in judicial and quasi-judicial proceedings, are immediately appealable is, in my view, not fitting. See *Blakely* v. *Danbury Hospital*, 323 Conn. 741, 746–47, 150 A.3d 1109 (2016); *Convalescent Center of Bloomfield, Inc.* v. *Dept. of Income Maintenance*, supra, 194–95. The pretrial denials of these common-law defenses were based on common-law rights, which required this court to determine whether these rights were akin to immunity from suit by providing a right to avoid litigation, whereas the present case involves a statutory defense, which we must examine under the dictates of § 1-2z. See, e.g., *Sena* v. *American Medical Response of Connecticut, Inc*., 333 Conn. 30, 40, 45, 213 A.3d 1110 (2019). Additionally, it is unclear if this court's holdings in those cases involving res judicata and/or collateral estoppel were correct in light of analogous federal case law. See *Strazza Building & Construction, Inc*. v. *Harris*, 346 Conn. 205, 210–11 n.2, 288 A.3d 1017 (2023).

[14] Of course, I recognize that the second prong of *Curcio* may be satisfied in a case that involves a right other than immunity from suit. See, e.g., *In re Teagan K.-O*., supra, 335 Conn. 755–59 (allowing immediate appeal from interlocutory order in family matters due to importance of right of family to remain together without interference of state). But neither the defendants nor the majority asserts any other kind of right, and thus my analysis will be limited to immunity from suit, which, in my view, is synonymous with the nature of the right the majority describes.

[15] More specifically, we have explained that, if a statute confers only immunity from liability, "a right whose remedy requires [only] the dismissal of charges," pretrial rulings denying a motion based on that more limited immunity are not immediately appealable under the second prong of *Curcio* because an immunity from liability defense can be vindicated after trial. (Internal quotation marks omitted.) *Hartford Accident & Indemnity Co*. v. *Ace American Reinsurance Co*., supra, 279 Conn. 232. Denials of a claimed right of immunity from suit, i.e., the right not to be tried and to be free of having to litigate, on the other hand, are immediately appealable because such a right cannot be vindicated after trial. See id.; *Shay* v. *Rossi*, supra, 253 Conn. 163–64.

[16] I recognize that, after the Ninth Circuit decided *Englert*, Oregon's legislature amended its anti-SLAPP statute to expressly permit an interlocutory appeal. See 2009 Or. Laws c. 449, §§ 1 and 3. That is a legislative prerogative, consistent with what I believe Connecticut's legislature expects of our courts under § 1-2z—to interpret the plain language of legislation consistently, without conjecture. The fact that other state legislatures have amended their anti-SLAPP statutes after a court had ruled that the statutory language did not allow for an immediate appeal should not alter our § 1-2z analysis but, rather, shows that the legislature is responsible for clearly stating its intention to authorize an appeal.

[17] Although the majority is concerned about "the protections afforded by the anti-SLAPP statute [that] would be irrevocably lost by virtue of having to litigate a putative SLAPP suit to conclusion following a trial court's erroneous denial of a special motion to dismiss," the majority's holding allows an interlocutory appeal from *all* denials of special motions to dismiss, not just erroneous denials. An appellate court can never know if the trial court committed error until it has heard the appeal. Indeed, because, in my view, the majority's "colorable claim" standard ensures that virtually every defendant's interlocutory appeal will survive a motion to dismiss; see part V of this opinion; it is inevitable that many appeals the majority's opinion sanctions will go to judgment and that it will be determined on appeal that the trial court did *not* commit error.

[18] I agree with the majority that the lack of explicit statutory language

providing a right to appeal is not relevant to this court's analysis under the second prong of *Curcio*. I nevertheless rely on the fact that other state legislatures have explicitly included a right to appeal in their anti-SLAPP statutes to emphasize the irrelevance of the case law from these jurisdictions, on which the majority relies.

[19] *NCDR, LLC* v. *Mauze & Bagby, PLLC*, 745 F.3d 742, 750–52 (5th Cir. 2014), decided under the federal collateral order doctrine, involved Texas' anti-SLAPP statute, which contains language much more explicit and definite than § 52-196a: "An appellate court shall expedite an appeal or other writ, whether interlocutory or not, from a trial court order on a motion to dismiss a legal action . . . or from a trial court's failure to rule on that motion in the time prescribed . . . ." Tex. Civ. Prac. & Rem. Code Ann. § 27.008 (b) (West 2020).

[20] See *Gundel* v. *AV Homes, Inc.*, 264 So. 3d 304, 310 (Fla. App. 2019) (legislative history showed that statute created right not to be subject to litigation).

[21] See *Morse Bros., Inc.* v. *Webster*, 772 A.2d 842, 848–49 (Me. 2001); *Duracraft Corp.* v. *Holmes Products Corp.*, 427 Mass. 156, 159–67, 691 N.E.2d 935 (1998); see also *Franchini* v. *Investor's Business Daily, Inc.*, 981 F.3d 1, 7 and n.6 (1st Cir. 2020) (applying Maine case law); *Los Lobos Renewable Power, LLC* v. *AmeriCulture, Inc.*, 885 F.3d 659, 666–67 (10th Cir.), cert. denied,     U.S.    , 139 S. Ct. 591, 202 L. Ed. 2d 427 (2018); *Henry* v. *Lake Charles American Press, LLC*, 566 F.3d 164, 178, 180–81 (5th Cir. 2009).

[22] In 2013, Nevada amended its anti-SLAPP statute to provide for an immediate right to appeal. See 2013 Nev. Stat. c. 176, § 4; see also *Wynn* v. *Bloom*, 852 Fed. Appx. 262, 262 n.1 (9th Cir. 2021).

[23] See, e.g., *Burton* v. *Mason*, Docket No. X06-UWY-CV-21-5028294-S, 2021 WL 6101177, *5 (Conn. Super. December 10, 2021) ("[b]ased on this record, the court cannot conclude that it is more likely than not that this matter was brought 'based on' the defendants' exercise of their rights to free speech, association or to petition the government"); *Robinson* v. *DeGray*, Docket No. KNL-CV-20-6049156-S, 2021 WL 1914162, *5 (Conn. Super. April 14, 2021) (based on record at time of hearing on special motion to dismiss, defendant failed to establish that statements made during work related grievance proceedings involved matters of public concern); *Littlefield* v. *Aurora*, Docket No. FST-CV-20-6045400-S, 2020 WL 5624108, *3 (Conn. Super. August 31, 2020) (based on record before trial court, defendants failed to show plaintiffs' complaint was based on defendants' exercise of first amendment rights).

[24] Most of these motions will be decided by the Appellate Court after the parties each file a ten page memorandum of law. Most rulings—granting or denying motions to dismiss—are issued without written opinions.

[25] Plaintiffs can seek attorney's fees under § 52-196a (f) (2). But that subsection provides that fees are to be awarded only if the court "finds that such special motion to dismiss is frivolous and solely intended to cause unnecessary delay . . . ." General Statutes § 52-196a (f) (2). By its terms, the statute appears to permit fees only for frivolous motions. Even if, presumably, this subsection would extend to frivolous *appeals* of motions that have been correctly denied, this is not a prevailing party standard. The standard for frivolousness does not guarantee a plaintiff compensation for fees and certainly not for the costs of delay. Cf. General Statutes § 52-196a (f) (1) (awarding "the moving party costs and reasonable attorney's fees" if trial court grants special motion to dismiss, without caveat).